## AUSTIN v. AUSTIN.*

(En Banc.   June 16, 1924.)

[100 So. 591.   No. 23874.]

HUSBAND AND WIFE.   *Neither husband nor wife can sue the other for*
*personal tort.*

> Section 94 of the Constitution of 1890, and sections 2517 and 2518,
> Code of 1906 (Hemingway's Code, sections 2051 and 2052), eman-
> cipating married women from the common-law disabilities of
> coverture, do not have the effect to remove the common-law dis-
> ability of husband and wife to sue each other for a personal tort;
> therefore the common law stands, and neither husband nor wife
> can maintain such a suit.

ETHRIDGE and HOLDEN, JJ., dissenting.

---

*Headnote 1.   Husband and Wife, 30 C. J., section 675.

APPEAL from circuit court of Hinds county, First Dis-
trict.

HON. W. H. POTTER, Judge.

Suit by Mrs. Viola Austin against H. L. Austin.   From
a judgment for defendant, plaintiff appeals.   Affirmed.

*Teat & Potter,* for appellant.

The question here presented for the decision of this court is the construction of sections 2517 and 2518, Code of 1906, sections 2051 and 2052, Hemingway's Code. The states of Alabama, New Hampshire, Connecticut, Oklahoma, Arkansas and North Carolina, all support our contention that under statutes, either identical or similar to ours, a wife may sue her husband for a tort committed upon her. The New Hampshire statute and the Mississippi statute are almost identical. *Johnson* v. *Johnson* (Ala.), 77 So. 335, 201 Ala. 41, 6 A. L. R. 1031; *Brown* v. *Brown,* 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185. To the same effect are the cases of *Fiedler* v. *Fiedler* (Okla.), 140 Pac. 1022, 52 L. R. A. (N. S.) 189; *Fitzpatrick* v. *Owen* (Ark.), 186 S. W. 832, 187 S. W. 460, 124 Ark. 167, L. R. A. 1917B, 774, Ann. Cas. 1918C, 772; *Prosser* v. *Prosser* (N. C.), 102 S. E. 787; *Cromwell* v. *Cromwell,* 105 S. E. 206, 106 S. E. 149.

In the court below, opposing counsel contended that although the Mississippi statute gave the wife the right to sue and be sued with all rights and liabilities incident thereto as if she were unmarried, and in express terms gave her the right of suing her husband, this action would not lie because no cause of action arose in her favor when the tort was committed upon her. If this is true the words of the statute are meaningless because under the common law no cause of action ever arose in favor of either spouse as against the other. The theory of unity prevailing and there only being one person in the eyes of the law, and that person being the husband, of course, no cause of action would lie. But can it be said in this enlightened age and in the state which enacted the first Married Woman's Act that this barbaric relic of antiquity still prevails.

If the wife is, in the eyes of the law, a separate being, endowed with her own identity and subject to all of the obligations imposed by law upon her, then the statute

giving her a right to sue and be sued as if she were un-married and giving her the further right in express terms to sue her husband, confers upon her the right to maintain this action.

In those cases supporting the contrary position, it is urged that it would be contrary to public policy to allow such actions to be brought; that the sanctity of the home would be invaded if the wife could sue her husband for real and fancied wrongs thereby destroying the granite pillars of civilization. Our answer to this contention is twofold: First, that this is a matter over which the courts have no concern. If the common-law fiction of unity does not prevail in Mississippi and if the legislature has de-creed that the public policy of our state is that the wife may sue her husband there is nothing for the court to do but to carry out this announced public policy. The pub-lic policy of the state, of course, is fixed by the legisla-ture, and the courts having determined the intention of the legislature are in duty bound to carry out that in-tention.

Our second answer to the defense of public policy is that it is no more scandalous, no more liable to destroy the sanctity of the home for the wife to sue her hasband in a civil action than it is for her to testify in the divorce courts or in the criminal courts touching the same sub-ject-matter. It was a proud boast of the common law that there was a redress for every wrong. There is no question that the plaintiff in this case was greatly dam-aged by reason of the negligent action of the defendant. There can be no doubt that in the enlightened public mind the old theory of unity has been abolished. A mere reading of the statute will convince the mind that the legislature has given the wife the right to sue her hus-band. All this being true, we contend that the demurrer to the defendant's replication should be sustained and that this case should be reversed and remanded.

*Watkins, Watkins & Eager,* for appellee.

For the thorough understanding of this question, it will be necessary to review the original common law upon the subject. At common law the husband and wife were considered one person. There was a complete unity of person and of interest. Marriage operated as a gift from the wife to the husband of all personal property, and the husband could do as he pleased with it; and likewise, the earnings of the wife went to the husband. See *Magruder* v. *Steward,* 4 How. 204; *Kilcrease* v. *Kilcrease,* 7 Howard, 311; *Lyon* v. *Knott,* 4 Cush. 548; *Clarke* v. *McCreary,* 12 S. & M. 347; *Henderson* v. *Warmack,* 5 Cush. 830; *Armstrong* v. *Armstrong,* 3 George, 279.

At common law, a married woman had no right to bind herself by contract, such contract being absolutely void. *Davis* v. *Foye,* 7 S. & M. 64. Suits for the recovery of her separate estate were brought in the name of her husband, down to 1857, when she was permitted to join with her husband but could sue alone if her husband refused to join. *Winston* v. *McClendon,* 43 Miss. 254; *Blodgett* v. *Ebbing,* 2 Cush. 245; 30 Corpus Juris, 495.

*Mississippi Legislation.* The injustice of this situation was early apparent to the lawmakers of the state of Mississippi. The original act dealing with the subject was that of 1836, and another one was in 1846. These acts were brought forward in the Mississippi Code of 1857, sections 335-336.

Notwithstanding this act, the wife still suffered other common-law disabilities. She could not contract with her husband and she could not bind her personal estate by engaging in business or trade. Sections 1778, 1779 and 1780 of the Code of 1871, however, contained all the provisions emancipating the wife, contained in the code of 1857, and in addition thereto provided that she could engage in business as a *feme sole,* and enter into contracts with her husband.

In the Code of 1880, sections 1167, 1168 and 1169, married women were completely emancipated, all common-law disabilities were removed in respect to their property, and it was provided that husband and wife might sue each other, and a married woman was permitted to dispose of her property by last will and testament.

Practically the same provision is found in chapter 61 of the Code of 1892; and the identical provisions are brought forward in chapter 35 of Hemingway's Code of the state of Mississippi.

*The Issue Here.* Our contention is that the acts of the Mississippi legislature emancipating woman in respect to her property and property rights did not completely revolutionize the marriage *status* and destroy the unity of husband and wife except as specifically provided by the statute; that the statutes providing remedies for the enforcement of existing rights, such as are expressly conferred, and that the statute permitting the husband to sue the wife and the wife to sue the husband created no liability not existing at the time or created by the statute. Such statutes are in derogation of common law, and that the unity of husband and wife will not be disturbed or destroyed to any greater extent than the statutes have provided. *Griffin* v. *Miller,* 29 Ga. App. 585, 116 S. E. 339; *Viguere* v. *Viguere* (La.), 63 So. 89: *Bertles* v. *Nunan,* 92 N. Y. 152, 44 A. R. 361.

Our position is that the unity of husband and wife is not completely destroyed. The husband was not liable to the wife nor was the wife liable to the husband, at common law, because they were the same person and the law could import no obligation on the part of one to the other. Our statutes have only changed the rule, and abrogated the unity of husband and wife, in respect to her property, and given her appropriate remedies for the enforcement of her property rights. In all other respects the unity of the husband and wife prevails to the fullest extent. Section 2051 of Hemingway's Code; Section 2052, Hemingway's Code. While we find no de-

cision from this court directly in point. *Hewlett* v. *Ragsdale,* 68 Miss. 703, is strongly analogous.

We now invite the attention of the court to the following authorities in support of the appellee's theory of this case: 13 R. C. L., Subject "Husband and Wife," paragraphs 443-444; *Thompson* v. *Thompson* (Court of Appeals, D. C.), 14 A. & E. Ann. Cases 879; *Thompson* v. *Thompson,* 218 U. S. 611, 54 L. Ed. 1180; California: *Peters* v. *Peters,* 103 Pac. 219, 23 L. R. A. (N. S.), 699; Georgia: *Hyman* v. *Hyman,* 92 S. E. 25; Iowa: *Peters* v. *Peters,* 42 Iowa, 182; Kentucky: *Dishon* v. *Dishon,* 219 S. W. 794; Maine: *Abbott* v. *Abbott,* 67 Me. 304, 24 Am. Rep. 27; Michigan: *Bandfield* v. *Bandfield,* 40 L. R. A. 757; Minnesota: *Strom* v. *Strom,* 107 N. W. 1047, 116 A. S. R. 387, Note 14, A. & E. Cas. 882; Missouri: *Rogers* v. *Rogers,* 177 S. W. 384; New York: *Schultz* v. *Schultz,* 98 N. Y. 644, and *Newton* v. *Webber,* 196 N. Y. S. 113; Pennsylvania: *Smith* v. *Smith,* 29 Pa. Dist. 10; Tennessee: *Lillienkamp* v. *Rippetoe,* 179 S. W. 628; Texas: *Sykes* v. *Spear,* 112 S. W. 422; *Wilson* v. *Brown,* 154 S. W. 322; Virginia: *Osborn, Adm.,* v. *Keister,* 96 S. E. 315, 1 A. L. R. 439; Washington: *Schultz* v. *Christopher,* 38 L. R. A. (N. S.) 780; England: *Phillips* v. *Barnett,* 1 Q. B. D. 436; Text books: 1 Cooley on Torts (3 Ed.), 474; 2 Kinkead's Commentaries on Torts, 868; 30 Corpus Juris, 954, par. 675.

*Teat & Potter,* for appellant in reply.

*An Analysis of our Law of Husband and Wife.* Section 2051 provides for a full emancipation from all disability on account of coverture. Section 2052 provides that husband and wife may sue each other, section 2053 provides that dower and curtesy as heretofore known are abolished. These sections stand in a class to themselves.

Let us now carefully examine section 2051, its language and punctuation. The court will notice that the first

sentence is set off by a semi-colon, "Married women are fully emancipated from all disability on account of coverture." This language is plain, simple and easily understood. It is a completed sentence. This language is chosen in the simplest words, and conveys an idea as definite as is possible to be stated. There is no modification or exception in this sentence. There is no limitation in this sentence. There is no duplicity in this sentence. There is no difficulty in understanding its meaning. It will be observed that the word "fully" before the word "emancipated" was intended to mean that the unity of husband and wife was "totally" destroyed and their legal identity wholly annihilated.

*Construction of Statutes.* We call the attention of the court to the primary law on the construction of statutes and invoke the application of it in the construction of the chapter in our Code on "husband and wife." 25 R. C. L., p. 961, sec. 217, p. 963, sec. 218; *Love* v. *Taylor,* 26 Miss. 567; *Moore* v. *Rowe* (Miss.), 53 So. 626; (1871) *Koch* v. *Bridges,* 45 M. 247; (1907) *Yerger* v. *State,* 91 Miss. 802, 45 So. 849; *Hawkins* v. *Carroll County,* 50 Miss. 735; *Peeler* v. *Peeler,* 68 Miss. 141, 8 So. 392; (1913) *Abbott* v. *State,* 106 Miss. 340, 63 So. 667; (1913) *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703; (1915) *Prather* v. *Googe,* 108 Miss. 670, 67 So. 157; *State* v. *J. J. Newman Lumber Co.,* 103 Miss. 263, 60 So. 215, 45 L. R. A. (N. S.) 858.

*Expressio Unius Est Exclusio Alterius.* We especially desire to call the attention of the court to the fact that sections 2054, 2055 and 2056 of Hemingway's Code, have expressed a modification of the Statute, section 2051. We deem this important because the legislature has interpreted section 2051 to mean that coverture has been totally destroyed. We therefore invoke the ancient rule, *"Expressio unius est exclusio alterius."* It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing. 25 R. C. L., page 981, section 229, and cases cited in the notes.

*Authorities of Appellee Not in Point.* In no instance did the court have before it similar statutes to those in chapter 25 of Hemingway's Code.

Argued orally by *J. A. Teat,* for appellant, and *W. H. Watkins,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant, Mrs. Viola Austin, sued the appellee, her husband, H. L. Austin, in the circuit court of Hinds county, for injuries alleged to have been received by her by reason of the negligent and reckless manner in which her said husband operated his automobile in which she was riding with him as his guest. The negligence consisted of his driving the car at an excessive rate of speed, causing it to overturn and injure appellant.

Appellee filed a special plea to appellant's declaration, setting up as a defense to the cause the fact that appellant and appellee at the time of said injury, and continuously thereafter up to and including the time of the trial of the cause, were man and wife and living together as such. To this special plea the appellant demurred on the ground that it presented no defense under the law, which demurrer the trial court overruled, appellant declining leave to plead further, a final judgment was entered dismissing her cause, from which she prosecutes this appeal. The sole question, therefore, in the case is whether under the laws of this state a husband is liable to his wife for an injury suffered by her as the result of a tort committed by him on her person.

Appellant admits that there was no such liability at common law, but contends that there is liability in this state under section 94 of our Constitution and sections 2517 and 2518, Code of 1906 (2051 and 2052, Hemingway's Code), emancipating women from the common-law disability of coverture. Those provisions of the Constitution

and statutes are in the following language in the order stated above:

Sec. 94. "The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads."

2517 (2051) "Married women are fully emancipated from all disability on account of coverture; and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy and to make any contract in reference to it, and to bind herself personally, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married."

2518 (2052) "Husband and wife may sue each other."

Appellee contends and the trial court so held, that said constitutional and statutory provisions made no such change in the common law; that neither expressly nor by implication do they give the wife or the husband a right of action against the other for a personal tort.

In order to determine this question, it should be kept in mind of what the common-law disabilities of coverture consisted. At common law a husband and wife were regarded as one person. By marriage he became the owner of all her tangible personal property as fully as if he had

bought and paid for it. He became the owner of her choses in action, provided he reduced them to possession actual or constructive during coverture. He was entitled to possession and control and the right to receive the rents and profits of her real estate during coverture, and under certain conditions this right was enlarged to an estate for life in said rents and profits. She could not make a will nor make a contract, nor could she sue or be sued alone. The earnings of the wife went to the husband. All suits in her behalf had to be brought in the name of her husband. The husband had to be joined in all suits against her. There was no right of action in either the husband or the wife for a personal tort of the other. The wife was without right of action against her husband for any wrong against her estate. The wife's disability to sue the husband was not alone for the lack of a remedy. That was merely incidental. It was for the lack of any cause of action. Therefore, in order to remove any disability of coverture affecting her right to sue, it was necessary to confer a right of action on her. Giving her a remedy to sue was not sufficient. Let us see if a right of action was conferred.

The first clause of section 94 of the Constitution prohibits the legislature from creating any distinction between "the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds or their power to contract in reference thereto." It is apparent at once that this broad language is not confined to married men and women, but the inhibition extends to all men and women whether married or single. The next clause of section 94 of the Constitution is in this language: "Married women are hereby fully emancipated from all disability on account of coverture." The balance of the section could have no bearing on the question involved in this case. The language of section 2517, Code of 1906 (2051 Hemingway's Code, to the first semicolon, is an exact rescript of the second clause of section 94 of the Constitution quoted above, following which the section undertakes

to set out, in our opinion, wherein and in what respect the full emancipation granted in the first part of the section consists. It consists of the abolition of the disabilities of married women so far as property rights are concerned. By express terms of the statute she is given full right to acquire, own, and dispose of all kinds of property. And the right to make contracts and do all acts with reference to property which she could lawfully do were she not married. She is given the right to sue and to be sued as if she were single. There is nothing in the statute granting these specific rights which by any sort of construction could be made to include the right of the wife to sue the husband for a tort against her person. Section 2518, Code of 1906, section 2052, Hemingway's Code, providing that "husband and wife may sue each other," confers on neither any right of action against the other. Its purpose was to authorize suits by husband and wife against each other where there existed a cause of action. Therefore, if any such right is conferred on the wife, it is by virtue of the second clause of section 94 of the Constitution and the first part of section 2517, Code of 1906 (2051 Hemingway's Code), in the language quoted above: Married women are fully emancipated from all disability on account of coverture." Clearly, if appellant is entitled to prevail in this case, it must be by virtue of that language.

Our Constitution and statutes on the subject were enacted for the purpose of striking down the inequalities existing between husband and wife. The intent was to put the wife on the exact equality with her husband—to emancipate her from the common-law slavery to her husband. It was not the purpose of the makers of our Constitution nor of the legislature to entirely destroy the unity of man and wife with all the incidents flowing therefrom. One of the disabilities of coverture was that neither could testify against the other. It took a statute specifically removing that disability. Section 1916, Code 1906; Hemingway's Code, section 1576. Equality between them as to the acquisition, ownership, and disposition of property, and the

right to contract and be contracted with, and sue and be sued with reference to property and contract rights were the things aimed at. At common law there was no right of action either by husband or wife against the other for a personal tort. There was absolute equality in that respect. Therefore there was no occasion to emancipate the wife with reference to such torts, because the husband was under the same sort of disability as the wife.

If appellant's contention were sound, we would have the novel situation of the wife having a cause of action against her husband for a personal tort, while the husband would have no such right against his wife; for there is nothing either in our Constitution or statutes which gives any such right to the husband.

The divorce courts and the criminal courts furnish ample redress to the husband and wife for such wrongs as this. The husband and wife in these times have enough grievances for the courts and scandal mongers without by a strained construction another being added by the courts. If another is to be added, it must be done by the legislature, not by the courts in the face of the great weight of authority both in numbers and reasoning. It would be hard to conceive of what good purpose would be accomplished by such suits. For illustration: The husband and wife are living together. She recovers judgment against him for an assault and battery and collects the judgment and puts the money in bank to her credit. They continue to live together as man and wife, if the lawsuit has not separated them. Result: The money would still be available for family purposes, except what had been expended in court costs and lawyers' fees. It would be like the husband taking money out of one of his pockets and putting it back in another. Of course, the same would be true of a suit and recovery by the husband against the wife on a like cause. Secrecy will cure many troubles of the home, while publicity will only add fuel to the flames.

Many of the authorities holding this view construed statutes substantially like our Constitution and statutes

on the subject. We cite some of them: *Peters* v. *Peters,* 156 Cal. 32, 103 Pac. 219, 23 L. R. A. (N. S.) 699; 13 R. C. L. Subject "Husband and Wife," pars. 443 and 444; *Thompson* v. *Thompson,* 218 U. S. 611, 31 Sup. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921; *Heyman* v. *Heyman,* 19 Ga. App. 634, 92 S. E. 25; *Peters* v. *Peters,* 42 Iowa, 182; *Dishon* v. *Dishon,* 187 Ky. 497, 219 S. W. 794, 13 A. L. R. 625; Abbott v. Abbott, 67 Me. 304, 24 Am. Rep. 27; *Bandfield* v. *Bandfield,* 117 Mich. 80, 75 N. W. 287; 40 L. R. A. 757, 72 Am. St. Rep 550; *Strom* v. *Strom,* 98 Minn. 427, 107 N. W. 1047, 6 L. R. A. (N. S.) 191, 116 Am. St. Rep. 387, 14 Ann. Cas. 882; *Rogers* v. *Rogers,* 265 Mo. 200, 177 S. W. 384; *Schultz* v. *Schultz,* 89 N. Y. 644; *Smith* v. *Smith,* 29 Pa. Dist. R. 10; *Lillienkamp* v. *Rippetoe,* 133 Tenn. 57, 179 S. W. 628; *Sykes* v. *Speer* (Tex. Civ. App), 112 S. W. 422; *Osborn* v. *Keister,* 123 Va. 157, 96 S. E. 315, 1 A. L. R. 539; *Schultz* v. *Christopher,* 65 Wash. 496, 118 Pac. 629, 38 L. R. A. (N. S.) 780; *Phillip* v. *Barnett* (England), 1 Q. B. D. 436.

The courts of Alabama, Arkansas, Connecticut, New Hampshire, and Oklahoma hold to the contrary. In some of those states, however, the statutes construed were materially different in substance from our Constitution and statutes on the subject.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I cannot bring myself to consent to a decision of first impression in this state where the effect of the decision is to deny the enforcement of a right or the redress of a wrong, using these terms in a legal sense, where a person is *sui juris.* The principle that for every wrong there is a remedy is so vital and fundamental that I cannot concur in a view that there is a legal wrong for which there is no redress in the courts or a legal right which cannot be enforced. I think it the duty of a judge, when a case of first impression arises, to go to the first prin-

ciples and the whole policy of the state and carefully consider the statutes and decisions on analogous questions, taking all the principles into consideration, and deduce the proper rules from such a consideration; and where a question has not been decided in this state and has been decided in other states of the Union, a judge should not only read the decision itself, or the several decisions if more than one, but should determine as far as he can the general legal policy and course of jurisprudence in such other states so far as he can, in connection and comparison with that of this state; and adopt such construction as will best promote justice according to the legal philosophy of this state. I, therefore feel that a judge, after so doing, is warranted in disagreeing with a majority of the court when, after a fair consideration of all the views of the different members, he cannot concur with a majority of the court.

Section 94 of the state Constitution reads as follows:

"The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads."

Section 24 of the state Constitution reads as follows:

"All courts shall be open; and every person for any injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay."

Section 2051, Hemingway's Code (2517, Code of 1906), reads as follows:

"Married women are fully emancipated from all disability on account of coverture; and the common law as to the disabilities of married women and its effect on

the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married.''

Section 2052, Hemingway's Code (2518, Code of 1906), reads as follows: ''Husband and wife may sue each other.''

Section 94 of the Constitution, above set out, provides in its first sentence that there shall be no distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. This section of the Constitution puts men and women upon an equality generally as to ownership, use, and disposition of property. The second sentence provides that ''married women are hereby fully emancipated from all disability on account of coverture,'' and is followed by this: ''But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads.'' The latter clause reserves the only right to the legislature to impose any liability on account of coverture. The rule is well settled in this state that where exceptions are enumerated in the Constitution, things not reserved are forbidden to the legislature. *Henry* v. *State,* 87 Miss 411, 39 So. 690, 6 Ann. Cas. 715. It then becomes important to determine with precision what were the disabilities of coverture from which the Constitution fully emancipated women.

In volume 9 of the First Edition of the American Encyclopædia of Law, under the title of ''The Unity of Husband and Wife,'' it is said:

''*The Fiction of Unity and the Consequences thereof.* —At common law one of the fictions most often referred to was, that by marriage the husband and wife became one legal person. The woman by marriage lost all legal identity, she became *civiliter mortua;* she was covered by or merged in her husband; she was called a '*feme covert,*' and her condition was called 'coverture.' . . . This fiction of legal unity affected at common law all the reciprocal capacities of husband and wife, and many of their mutual rights and obligations; and by assuming that it was the wife whose identity was lost gave rise to all the disabilities of married women. To illustrate: Husband and wife being one person could not contract together or wrong each other civilly or criminally, or sue each other; they could not testify for or against each other; and a sale by a trustee to his wife was like a sale to himself; in some cases one could act for the other. The wife being merged in the husband took his name. If property vested in them with a third person they took one-half, not two-thirds. If real estate vested in them they took one estate, and became tenants by entireties.

''These various matters will now be separately discussed.

''By the common law, contracts between husband and wife are absolutely void for want of parties and the wife's power to consent. A mere personal executory contract between them is unqualifiedly void, and a transfer from one to the other can be affected only through a third party. A wife can execute a power in favor of her husband, and can deal with him in her representative capacities, but the validity of any other contract between them must be based either upon the doctrines of equity or upon the provisions of some statute.''

In equity the duality of husband and wife was recognized for many purposes and in nearly all of the states statutes have been enacted, beginning in the early days of the country's history and continuing down to date, greatly varying in their provisions but gradually removing the restrictions of coverture. In 1880 the legislature of this state completely abolished coverture, and in 1890 this public policy of the state was placed in the Constitution so as to forever preserve the independent personality of the wife. At common law, in consequence of the unity of person between husband and wife whereby the husband became the combined person of husband and wife and the wife completely lost her identity, a husband and wife could not sue each other because of this unity; and they could not legally injure each other so as to give a right of action, because in legal contemplation the injury to the wife was only an injury to the husband. In other words, an injury to the wife was an injury to himself, and it would be absurd to have him sue himself and recover from himself money for the use of himself. The husband injuring the wife was only injuring himself; in the legal view, she did not exist for these purposes. The whole basis of the doctrine of nonliability arose from the legal fiction of unity of person, and when unity of person disappears, and the wife is made a legal person, she has all the rights that any other legal person has.

This court has on two occasions held that the act of 1880 completely abolished coverture. In *Wyatt* v. *Wyatt*, 81 Miss. 219, 32 So. 317, at page 229 of the official report, page 318 of the Southern Reporter, the court said:

"Since the adoption of the Code of 1880, the Constitution of 1890, and the Code of 1892, effecting the complete emancipation of married women, and authorizing *every character of suit between husband and wife,* the validity of a contract between them cannot be questioned in judicial tribunals of this state; and such contracts may be enforced by one against the other. *McGregor* v. *Mc-*

*Gregor,* 20 Q. B. Div. 529; *Wilson* v. *Wilson,* 1 H. L. Cas. 538; *Besant* v. *Wood,* 12 Ch. Div. 605. *The unrestricted right of the wife to sue the husband, secured to her by the Constitution and Code,* would be lame and ineffectual unless she could make all contracts of whatever kind, with her husband.'' (Italics supplied.)

In *Southworth* v. *Brownlow,* 84 Miss. 405, 36 So. 522, the court held that section 2323 of the Code of 1871, providing that no act of the husband should affect the wife's interest in land, ceased to be operative when married women were wholly emancipated from all disability on account of coverture. Code 1880, section 1167; Constitution 1890, section 94; Code 1892, section 2289. And it was held in that case that the statute of limitation would run against the wife during the life of the husband. The court said:

''The proof clearly shows that appellees have been in open, notorious, and uninterrupted possession of the land since the attempted sale of it to them by W. Berry Prince, the ancestor of appellant, in 1880. Since the 1st of November, 1880, when the Revised Code of 1880 went into effect, abolishing coverture, with all its incidents and disabilities, section 2323, Code 1871, ceased to operate. . . . Since coverture prevented, at common law, a married woman from suing, therefore it was not right that any act of the husband should operate a disseizin of the wife as to any lands to which she had title, or in any way prejudice or affect her rights thereto. Since, therefore, the whole object of the said section 2323, Code 1871, was to prevent the wife from being prejudiced because of her coverture, it follows that, when coverture was wholly abolished, there was no longer any need for said statute. When the system of coverture fell, the statute (section 2323, Code 1871) fell with it.''

Section 2051, Hemingway's Code (section 2517, Code of 1906), above set out, provides that ''married women are fully emancipated from all disability on account of coverture.'' Therefore the incidents of coverture which

prevented the husband from committing a wrong to the wife because of unity of person vanishes. She becomes a complete legal person, vested with all the rights that she would have if she were not married. It is expressly provided in the section that "the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated." What is totally abrogated? The disabilities of a married woman; all disabilities of every kind and character, and the effect of the disabilities on the rights of property of the wife. It further provides that marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort. How may property be acquired? It may be acquired by reason of injury to a person. The law gives the right of acquisition to a person where there is a wrongful injury of a person by another. There can be no question about the fact that a woman, if not married to a man who injured her tortuously, could recover and get judgment against him, and through this judgment acquire his property, or a part of it, in satisfaction of the judgment and in compensation for her personal injury. The latter part of the section provides that she can do all acts in reference to property which she could lawfully do if she were not married, which includes, of course, acquiring property through the laws of judgment and execution; and provides that she shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married. It would be difficult to find language which would confer the right if this does not do so.

When we come to section 24 of the Constitution, above set out, we find that the Constitution itself gives every person for an injury done him in his lands, goods, person, or reputation, a remedy by due course of law. This

section of the Constitution is not merely high-sounding phraseology, but it guarantees to every person in the state, whether male or female, who has an injury done him in his lands, goods, person, or reputation, a remedy by due course of law, and it is not within the power of the legislature to deny to such person a remedy for the injury.

When the Constitution and legislature emancipated women from the disability of coverture, they necessarily made her a legal person, and made her *sui juris*, capable of attending to her own affairs to the same extent that she could if she had never been married at all. This section of the Constitution is the law. It has all the force of law. Every person who is *sui juris* has the right under the law to a redress for a personal injury. There can be no kind of doubt about the fact that the wife is a person. The old fiction of the unity of person of the husband and wife has been completely abrogated as shown by the expressions of this court above. Hereafter there can be no distinction. This section does not merely place the wife on an equality with her husband, but it places her on an equality with a single woman, and gives her all the rights that she would have had under the same facts if she were single instead of married.

We have no statute in this state expressly conferring upon ex-slaves the right to sue their former masters, but such right follows as a matter of course, when the slave became a legal person, capable of exercising the same rights as other citizens exercise. The right followed the change of *status* as the night follows the day. The legislature, of course, could have kept women shackled, subject to the tyranny and fury of their husbands, had it seen fit and proper to do so—had not the Constitutional Convention acted. We are constantly passing upon cases and awarding redress for legal injuries where there is no statute, the cause of action arising from an invasion of a personal right or the infliction of a legal injury.

There can be no distinction in principle between torts inflicted negligently and torts inflicted criminally.

In the recent case of *Gross* v. *State,* 100 So. 177, decided May 19, 1924, this court, speaking through the judge who wrote the majority opinion here, held that the husband had no right under the law of this state to inflict corporal punishment on his wife even for the purpose of correction when done in moderation, as was likewise held in *Harris* v. *State,* 71 Miss. 462, 14 So. 266, and *Turner* v. *State,* 60 Miss. 351, 45 Am. Rep. 412. It is therefore unlawful and a legal wrong for the husband to inflict corporal punishment upon the wife, and by reason of his perpetrated wrong upon the wife a cause of action would clearly arise in favor of the wife, if she were not married. The statutes above cited, in the plainest possible language, give the right to the wife to sue as though she were not married.

In the case of *Fiedler* v. *Fiedler,* 42 Okl. 124, 140 Pac. 1022, 52 L. R. A. (N. S.) 189, the supreme court of Oklahoma, in an opinion holding liability against the husband in favor of the wife, referred to the Bill of Rights in the Constitution of that state, which read as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice"—as being efficacious in conferring a legal right upon the wife to sue for a tort inflicted by her husband. In that case the suit was for a gunshot wound maliciously inflicted by the husband during coverture. A demurrer to the declaration was sustained in the court below holding that no right of action resulted from the wrong because of the marriage relations existing at the time the wound was inflicted. At page 190 of the L. R. A. report, the court said:

"Plaintiff demurred to the second and third paragraphs of the answer for the reason that they failed to

state a defense to plaintiff's cause of action. The court
sustained the demurrer. Defendant refused to plead
further, stood upon his answer, and appealed to this
court upon the one proposition that an action by neither
the husband nor wife will lie against the other for a tort
committed during coverture. This brings us to a ques-
tion which, especially under modern jurisprudence, has
been the occasion of much profound reasoning and of an
equal amount of sophistry. Many carefully reasoned,
though we cannot say well reasoned, cases are cited in
support of plaintiff in error's contention. From an ex-
amination of the authorities cited, they appear to us as
in a great measure controlled by the common-law rule
under which the entity of the wife was completely lost in
the husband. But modern legislatures, though vainly
it seems, have by plain, explicit, and unambiguous lan-
guage attempted to break away from the common-law
rule, and to put the courts out of hearing of the still lin-
gering echoes of barbaric days. The ground upon which
the stronger of the more modern decisions have denied one
spouse the right to maintain an action for tort against
the other during coverture has been in the main based
upon public policy, reasoning that to maintain such an
action would tend to invade the holy sanctity of the home
and shatter the sacred relations between husband and
wife, and that therefore, for public's sake, such actions
should not be maintained; and yet those very decisions, in
support of their philosophy, hold that the civil courts are
open to parties seeking divorce and alimony, and that
the criminal courts are open for the prosecution of either
husband or wife for assault and battery, cudgelings, or
for shooting each other with shotguns. We fail to feel
the force of such philosophy. We fail to comprehend
wherein public policy sustains a greater injury by allow-
ing a wife compensation for being disabled for life by the
brutal assault of a man with whom she has been unfor-
tunately linked for life, than it would be to allow her

to go into a criminal court and prosecute him and send him to the penitentiary for such assault.

"Nor are we able to perceive wherein the sensitive nerves of society are worse jarred by such a proceeding than it would be to allow the parties to go into a divorce court and lay bare every act of their marriage relation in order to obtain alimony. But, aside from the philosophy on the one side or the other, it appears to us that the plain English language of our Constitution and statutes should enable us to determine what the rights of a married woman are intended to be in such cases. Section 6, art. 2, of the Constitution of Oklahoma, provides: 'The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.' From the language of this section of the Bill of Rights, it appears to us that the framers of our Constitution clearly intended to open the courts of justice to every person, no matter whom, for redress of wrongs and for reparation for injuries.

"In furtherance of such intention, our legislature, realizing the harsh rules of the common law in such matters, has provided, section 3363, Rev. Laws 1910: 'Woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injuries sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone. . . .'

"Section 2845, Rev. Laws 1910, provides: 'Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in

fault a compensation therefor in money, which is called damages.'

"Section 2846, Id., defines what is meant by a detriment as follows: 'Detriment is a loss or harm suffered in person or property.'

"The foregoing statutes, it seems to us, are sufficiently clear to define the rights of persons without discrimination or distinction, and to enable all persons to know just what their rights are, and the courts to know just how to adjudicate them. But our legislature, possibly in contemplation of such contingencies, and in order to avoid the reading into the statute a meaning not intended, or at least in further emphasis of its intention, has made other provisions. Section 2914, Rev. Laws 1910, reads: 'Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained.'

"And in order to make itself still more clear as to its intentions, the legislature in section 2948, Id., said: 'The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice.'

"Construing these statutes and constitutional provisions as a whole, we think it is clearly manifest that the legislative intent has been an endeavor to shake off the shackles of the common-law rules as to the rights of married women, and to clearly define such rights. Besides, many of the more modern decisions on this question either offer an apology or give way to expressions of regret that the earlier decisions of their respective jurisdictions had announced a doctrine in which they did not fully concur, but by which they felt themselves bound."

In the case of *Brown* v. *Brown*, 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185, Ann. Cas. 1915D, 70, the supreme court of Connecticut under chapter 114, Acts of 1877 be-

ing an act concerning domestic relations, but commonly called the Married Woman's Act, in an action by the wife for damages for assault and battery and false imprisonment, held that a wife might sue her husband under the terms of that act. This act took effect after April 20, 1877, and the court said in that case:

"By these two cases it is established that a wife, married since April 20, 1877, may contract with her husband or other person, and may in her own name sue her husband or such other person for breach of such contract; also that she has a cause of action upon which she may recover in a suit brought in her own name for personal injuries wrongfully inflicted upon her by others than her husband. If a cause of action in her favor arises from the wrongful infliction of such injuries upon her by another, why does not the wrongful infliction of such injuries by her husband now give her a cause of action against him? If she may sue him for a broken promise, why may she not sue him for a broken arm? The defendant's answer is that a wise public policy forbids it, that no right of action accrued to her from such a tort prior to the statute of 1877, that none is expressly given her by that statute, and that none can be implied; and that this is the holding of courts in other jurisdictions in cases which have arisen under similar statutes.

"It is true that courts in some of the states have held that statutes more or less similar to the one here in question give a married woman no right of action against her husband for a tort. They find in the statutes construed no legislative intent to change the legal *status* of husband and wife as regards the legal identity of the two, but simply an intent to ameliorate the condition of the wife by permitting her to retain and deal with her own property, and to contract with, and sue and be sued by, others than her husband. These courts generally hold that unless there is an express provision giving her the right to sue her husband, she has no action against him upon contract or for tort. It is unnecessary to review the individual cases.

As we said in *Mathewson* v. *Mathewson,* 79 Conn. 23, 63 Atl. 285, where an act leaves the foundation of the marriage *status* unchanged, and merely provides exceptions to the necessary consequences of that *status,* such exceptions may properly be limited by the necessary import of the language describing them. If the legislative intent in such an enactment is not to change the foundation upon which the *status* of married persons was based at common law, namely, their legal identity, but its purpose is to empower the wife, while that *status* exists, to contract and sue in her own name like a *feme sole,* it might well be held that language bestowing this right could not be so extended as to permit her to contract with her husband or to sue him for a tort, because the statute intends that her identity shall still be merged in that of her husband. In the two cases above cited we have already held that the legislative intent in the act of 1877 was to change the foundation of the legal *status* of husband and wife, and that the statute effects that change. In marriages which have occurred since the act took effect the parties retain their legal identity, and their civil rights are to be determined in accordance with the *status* thus established. These rights, except so far as they are modified by the statute itself or by other statutes, or are necessarily affected by the reciprocal rights and obligations which are inherent in the relation of husband and wife, are the same as they were before marriage. The statute leaves nothing to implication. The right to contract with the husband, and to sue him for breach of contract, and to sue for torts, is not given to the wife by the statute. These are rights which belonged to her before marriage, and, because of the new marriage *status* created by the statute, are not lost by the fact of marriage, as they were under the common-law *status.* The *status* of the parties after marriage being fixed, there was no occasion for providing in express terms what the consequences would be. They followed logically.

"In the Mathewson case we held that a wife's right to contract with the husband, and to sue him for breach of such contract, followed necessarily from the fact, established by the statute, that her legal identity was not lost by her coverture. It is an equally necessary consequence of her retention of her legal identity after coverture, that she has a right of action against her husband for a tort committed by him against her and resulting in her injury. Such a tort gives rise to a claim for damages. Such claim is property not in her possession, but which she may by action reduce into her possession, just as she might before her coverture have had an action against him for such a tort committed before that event. The husband's wrong, whether a breach of contract or personal injury, gives her a cause of action. Both necessarily follow from the fact that a married woman now retains her legal identity and all her property, both that which she possessed at the time of marriage and that acquired afterward.

"In the fact that the wife has a cause of action against her husband for wrongful injuries to her person or property committed by him, we see nothing which is injurious to the public, or against the public good, or against good morals. This is the usual test for determining whether a statute or a contract is against public policy. When a wife is allowed to possess and deal with her own property and carry on business in her own name like a *feme sole,* she ought to have the same right to contract and enforce her contracts, and the same remedies for injuries to her person and property, which others have, and to be liable upon her contracts and for her torts the same as others are. This is the position in which she now stands. The danger that the domestic tranquillity may be distrubed if husband and wife have rights of action against each other for torts, and that the courts will be filled with actions brought by them against each other for assault, slander and libel, as suggested in some of the cases cited in behalf of the defendant, we think is not serious. So long as there remains to the parties domestic tranquillity, while

a remnant is left of that affection and respect without which there cannot have been a true marriage, such actions will be impossible. When the purposes of the marriage relation have wholly failed by reason of the misconduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons. Courts are established and maintained to enforce remedies for every wrong, upon the theory that it is for the public interest that personal differences should thus be adjusted rather than that the parties should be left to settle them according to the law of nature. No greater public inconvenience and scandal can thus arise than would arise if they were left to answer one assault with another and one slander with another slander, until the public peace is broken and the criminal law invoked against them. We find nothing to warrant the claim that public policy is opposed to the existence of a cause of action for a personal tort in favor of husband or wife against the other spouse where the wife's identity is not merged in that of her husband. The plaintiff and defendant having married subsequent to April 20, 1877, the facts alleged in the complaint were not insufficient by reason of her coverture, and the demurrer should have been overruled."

The New Hampshire court in the case of *Gilman* v. *Gilman,* 78 N. H. 4, 95 Atl. 657, L. R. A. 1916B, at page 907, held that a woman may sue her husband for an assault under the statute permitting her to sue and be sued in all matters of law and equity as if she were not married. The court in the latter part of the opinion said:

"Therefore the test to determine whether the plaintiff can maintain this action is to inquire whether she could maintain it if she were unmarried, and not to inquire who the defendant is, nor whether she is seeking to enforce a property right. In a word: If a married woman is either injured or damaged by another's illegal act, the statute gives her a remedy even though that other is her husband;

and it is, and was at the time the statute was enacted, illegal for a husband to assault his wife. *Poor* v. *Poor,* 8 N. H. 307, 313, 29 Am. Dec. 664.''

In *Johnson* v. *Johnson,* 201 Ala. 41, 77 So. 335, 6 A. L. R. 1031, the Alabama court held that a woman may sue her husband for assault under statutes abrogating the fiction of legal identity and permitting her to sue alone for injuries to her person. In referring to the contention of counsel that the remedy to the wife was by criminal prosecution or an action for divorce and alimony, the court said:

''The wife's remedies, by a criminal prosecution or an action for divorce and alimony, which in some jurisdictions are allowed to stand as her adequate remedies for wrongs of the sort described in this complaint, so far from being adequate remedies, appear to us to be illusory and inadequate, while, as for the policy which would avoid the public airing of family troubles, we see no reason why it should weigh more heavily against this action than against those which the courts universally allow.''

In the case of *Prosser* v. *Prosser,* 114 S. C. 45, 102 S. E. 787, the South Carolina court held that the wife could maintain an action against her husband for willfully beating her under the provisons of the statutes of that state. In that case the court below also held that the complaint constituted no cause of action and a demurrer was sustained. Upon appeal the supreme court said:

''The gravamen of the demurrer is: (1) That by the common law the wife had no such right, (2) that the legislature alone can give her such right, and (3) that the legislature has not done so. The first and second postulates are pitifully true. The third postulate is not true, and we come immediately to the consideration of that issue.

''Neither the Constitution of 1868, nor that of 1895, nor the statutes enacted pursuant thereto, by so many words give to a married woman power 'to sue.' The act of 1891 (20 St. at Large, p. 1121; section 3761, Code of Laws)

declared she might 'enforce' the 'contract' made with her, but it makes no mention of actions for tort.

"The Constitution of 1868 merely conferred on the wife the power to hold property; that of 1895 added to so much the power to contract. The act of 1870 (14 St. at Large, p. 325), passed 'to carry into effect the provisions of the Constitution,' did little more than enact the provisions of the Constitution of 1868 and added the power to contract.

"But the Code of Procedure enacted in 1870 provides comprehensive 'remedies' for the redress of wrongs.

"At the common law it was, of course, an actionable wrong for a stranger to beat a married woman. If the beating was by her husband the wrong was none the less, for the act was at least a violation of the criminal law. But the courts denied a civil action to the wife upon the theory that she could not sue herself, and the husband was part of herself. The judges pointed her for a remedy to the divorce courts and the criminal courts. The anomaly was thus presented of incarcerating a wife beater if he should beat his wife-self, but loosing his purse if he should commit the identical act. For the beating she suffered the wrong, but she had not the remedy by civil action.

"The act of 1870 entitled the Code of Procedure gave her the remedy. That statute defines an action as a proceeding, amongst other things, to redress á private wrong (section 114); and it provides that actions shall be prosecuted by the real party in interest (section 160); and it provides, by necessary implication, that a married woman may sue (section 163), and that in two instances she may sue alone, (1) when the action concerns her separate property, and (2) when the action is between herself and her husband. The necessary implication is that the second instance is not included in the first instance; that is to say, she may sue her husband in circumstances not concerning her 'separate' property.

"The Code of Procedure is thus in derogation of the common law, and it must not be strictly construed. Section 487.

"The necessary inference is that by a liberal and not by a strict construction the Code of Procedure was enacted to give to a wife every remedy against her husband for any wrong she might suffer at his hands. More than this, a wife has a right in her person; and a suit for a wrong to her person is a thing in action; and a thing in action is property, and her property. Section 483.

"This action is therefore maintainable under our own case of *Messervy* v. *Messervy,* 82 S. C. 559, 64 S. E. 753.

"The order of the circuit court is reversed, and the cause is remanded there for trial."

In the case of *Fitzpatrick* v. *Owens,* 124 Ark. 167, 186 S. W. 832, L. R. A. 1917B, 774, Ann. Cas. 1918C, 772, the Arkansas court upheld the right of action in favor of the wife against the husband for personal injuries, saying:

"Under Acts 1915, p. 684, removing the disabilities of married women and providing that a married woman in law and equity shall enjoy all rights and be subjected to all laws as though she were a *feme sole,* a married woman may maintain an action against her husband either for contract or tort, and her representatives may sue her husband for wrongful death under Kirby's Dig., section 6289."

The decision in this case is a very interesting one and reviews many of the cases referred to in the majority opinion in this case and in the briefs of appellee. It was argued in that case that the language of the statute did not confer a right of action on a married woman against her husband, because a *feme sole* or similar one would have no husband to sue and therefore that it was not intended to give her any greater right than she would have if she were a *feme sole.* The court said:

"We scarcely think that the lawmakers had that in mind; for they were dealing entirely with enlarged rights

and remedies of a married woman, and it was evidently meant to confer upon her the enjoyment of those rights and remedies, even against her husband, the same as if she were unmarried.

We are convinced, therefore, that this was the in-. tention of the lawmakers, and it would be doing violence to their manifest purpose to further apply the rule of restriction on account of the statute being in derogation of the common law, and to hold that a married woman has no right of action against her husband. We have, as has been so often said by this and other courts, nothing to do with the the policy of the law; for that is controlled entirely by the legislative branch of government. It cannot be said that there is any such fixed policy on the subject that the legislature has not the power to change."

In the case of *Crowell* v. *Crowell,* 180 N. C. 516, 105 S. E. 206, the North Carolina court had before it a very aggravated case where a wife sued her husband for damages for afflicting her with a venereal disease, and the court held that this was a tort for which the wife could recover. The action was founded on the Revisal 1905, section 408 (C. S. section 454), and Laws 1913, chapter 13. At page 207 of the S. E. Reporter (180 N. C. 516, 518) the court said:

"There can be no question in this day that if the defendant had violently assaulted his wife and caused serious bodily injury to her person, and humiliation to her, she could maintain an action for damages against him. Even under the obsolete ruling of the courts (for it was never statutory) that a husband could chastise his wife with impunity, there was an exception that he was liable if he caused her serious bodily harm or permanent injury."

As to the suggestion that the remedy was a criminal prosecution or a divorce proceeding, the court said:

"As to the suggestion that the defendant could be indicted, that was a matter for the state which has not thus proceeded, and a conviction would be no reparation to

the plaintiff. Besides, if the unity does not prevent an indictment why should it prevent a civil action? At common law neither civil nor criminal actions could be maintained by the wife against the husband, because of the alleged unity of persons of husband and wife, or rather the merger of the wife's existence into the husband's. The real reason was that by marriage the wife became the chattel of the husband (as a reminder of which to this day at a marriage it is asked who 'gives this woman away'), and therefore her personal property by the fact of marriage became his, as was the case in this state as to wives until the Constitution of 1868, though as to slaves it had ceased on their emancipation in 1865. The owner lost the right to chastise his slaves in 1865, but the wife was not emancipated from the lash of the husband till nine years later in 1874, when in *State* v. *Oliver,* 70 N. C. 60, SETTLE, J., tersely said: We have 'advanced from that barbarism.' His authority for making such ruling was that chapter 5, Laws 1715, and chapter 133, Laws 1778, now C. S., section 970, adopted such parts only of the common law which are 'not abrogated, repealed or become obsolete.' ''

In the case of *Thompson* v. *Thompson,* 218 U. S. 611, 31 Sup. Ct. 111, 21 Ann. Cas. 921, which has been referred to in the majority opinion and frequently quoted as sustaining a doctrine against the right of a woman to sue her husband for tort is a case that arises under law of the District of Columbia, which authorized married women to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried. The majority opinion in that case does hold that this act does not confer a right of action against the husband for tort committed during married relation giving its reason for said holding, that the statute had not removed all of the disabilities of coverture, and predicating his decision upon common law.

The majority opinion in that case says:

"At the common law the husband and wife were regarded as one. The legal existence of the wife during coverture was merged in that of the husband, and, generally speaking, the wife was incapable of making contracts, of acquiring property or disposing of the same without her husband's consent. They could not enter into contracts with each other, nor were they liable for torts committed by one against the other. In pursuance of a more liberal policy in favor of the wife, statutes have been passed in many of the states looking to the relief of a married woman from the disabilities imposed upon her as a *feme covert* by the common law. Under these laws she has been empowered to control and dispose of her own property free from the constraint of the husband, in many instances to carry on trade and business, and to deal with third persons as though she were a single woman. The wife has further been enabled by the passage of such statutes to sue for trespass upon her rights in property and to protect the security of her person against the wrongs and assaults of others."

Justice Harlan, one of the brightest stars in the judicial firmament, during the long period which he served upon the United States Supreme Bench, dissented from this holding in a very able opinion concurred in by Justice Holmes and Justice Hughes. In the course of this opinion he said:

"The court below held that these provisions did not authorize an action for tort committed by the husband against the wife.

"In my opinion these statutory provisions, properly construed, embrace such a case as the present one. If the words used by Congress lead to such a result, and if, as suggested, that result be undesirable on grounds of public policy, it is not within the functions of the court to ward off the dangers feared or the evils threatened simply by a judicial construction that will defeat the plainly expressed will of the legislative department. With the mere policy, expediency or justice of legislation

the courts, in our system of government, have no rightful concern. Their duty is only to declare what the law is, not what, in their judgment, it ought to be—leaving the responsibility for legislation where it exclusively belongs, that is, with the legislative department, so long as it keeps within constitutional limits. Now, there is not here, as I think, any room whatever for mere construction—so explicit are the words of Congress. Let us follow the clauses of the statute in their order. The statute enables the married woman to take, as her own property of any kind, no matter how acquired by her, as well as the avails of her skill, labor or personal exertions 'as absolutely as if she were unmarried.' It then confers upon married women the power to engage in any business, no matter what, and to enter into contracts, whether engaged in business or not, and to sue separately upon those contracts. If the statutes stopped here, there would be ground for holding that it did not authorize this suit. But the statute goes much farther. It proceeds to authorize married women 'also' to sue separately for the recovery, security or protection of their property; still more, they may sue, separately, 'for torts committed against them, as fully and freely as if they were unmarried.' No discrimination is made, in either case, between the persons charged with committing the tort. No exception is made in reference to the husband, if he happens to be the party charged with transgressing the rights conferred upon the wife by the statute. In other words, Congress, by those statutory provisions, destroys the unity of the marriage association as it had previously existed. It makes a radical change in the relations of man and wife as those relations were at common law in this district. In respect of business and property the married woman is given absolute control; in respect of the recovery, security and protection of her property, she may sue, separately, in tort, as if she was unmarried; and in respect of herself, that is, of her person, she may sue, separately, as fully and freely, as if she

were unmarried, 'for torts committed against her.' So the statute expressly reads. But my brethren think that notwithstanding the destruction by the statute of the unity of the married relation, it could not have been intended to open the doors of the courts to accusations of all sorts by husband and wife against each other; and, therefore, they are moved to add, by construction, to the provision that married women may 'sue separately . . . for torts committed against them as fully and freely as if they were unmarried' these words: 'Provided, however, that the wife shall not be entitled, in any case, to sue her husband separately for a tort committed against her person.' If the husband violently takes possession of his wife's property and withholds it from her she may, under the statute, sue him, separately, for its recovery. But such a civil action will be one in tort. If he injures or destroys her property she may, under the statute, sue him, separately, for damages. That action would also be one in tort. If these propositions are disputed, what becomes of the words in the statute to the effect that she may 'sue separately for the recovery, security and protection' of her property? But if they are conceded—as I think they must be—then Congress, under the construction now placed by the court on the statute, is put in the anomalous position of allowing a married woman to sue her husband separately, in tort, for the recovery of her property, but denying her the right or privilege to sue him separately, in tort, for damages arising from his brutal assaults upon her person. I will not assume that Congress intended to bring about any such result. I cannot believe that it intended to permit the wife to sue the husband separately, in tort, for the recovery, including damages for the detention, of her property, and at the same time deny her the right to sue him, separately, for a tort committed against her person.

"I repeat that with the policy, wisdom or justice of the legislation in question this court can have no rightful concern. It must take the law as it has been estab-

lished by competent legislative authority. It cannot, in any legal sense, make law, but only declare what the law · is, as established by competent authority.

"My brethren feel constrained to say that the present case illustrates the attempt, often made, to effect radical changes in the common law by mere construction. On the contrary, the judgment just rendered will have, as I think, the effect to defeat the clearly expressed will of the Legislature by a construction of its words that can not be reconciled with their ordinary meaning."

The cases cited in the majority opinion are mostly on statutes widely different from our statute, and I think that none of them refer to any provision like section 24 of our Constitution to give a right of action. If such provision existed, it was not referred to in these opinions and evidently not called to the attention of the court. These decisions are ably discussed in briefs of counsel, and I shall not protract the opinion by comment upon them, believing that a careful reading of the opinions cited in this opinion with those opinions will convince the unbiased mind that the majority opinion is wrong.

It is well known that the judicial department of the whole country is reluctant to travel new-cut roads, and the disposition to cling to the absurd and brutal rules of the common law in so far as it deals with women and women's rights in the marriage relation is nothing less than astonishing. In ancient and medieval times women had no rights which their husbands were bound to respect. During the gradual evolution of civilization the slavery of ancient times has been slowly and almost imperceptibly modified, but, it seems, not totally abolished yet in this state. I had believed and confidently hoped that our Constitution and statutes forever erased this blot upon our civilization. It is difficult for me to see the philosophy of that line of cases which holds that it would be disturbing to society and contrary to public policy to permit a woman to sue her husband for a personal injury. Throughout the long ages of history, so

136 Miss.—7.

far as we are informed, until very recent years, women have had to suffer in silence all the wrongs and privations which the male race chose to inflict upon them without any voice or any recourse for redress of their grievances.

It takes strong cases to test principles. Suppose a man having property should choose to inflict violence upon his wife to the extent of total disability and utter disfiguration of her person, and should leave the state while she was in the hospital or recovering sufficiently to take action. The criminal law cannot reach him because he is out of the state's jurisdiction, and no personal judgment could be entered against him for alimony. If he could get his property out of the state, or carried it with him, his wife would be totally without a remedy although she is totally disabled. It seems like it is a strange society that would be disturbed by the wife bringing suit for proper remuneration in such case. Suppose again, as in the North Carolina case, the husband uses force and inflicts upon his wife a disease that destroys her body and would finally run her insane, would she have no remedy except a divorce? It seems to me that such a thing is unthinkable in a civilized community. Many people have conscientious scruples against divorce, and they are inveighed against with great force, by many religious and other powerful organizations. After all, a divorce is not an adequate remedy for the wrong suffered.

The illustration introduced in the majority opinion shows the absurdity of the view for which I contend and is refreshing. Says the court:

"She recovers judgment against him for an assault and battery and collects the judgment and puts the money in bank to her credit. They continue to live together as man and wife, if the lawsuit has not separated them. Result: The money would still be available for family purposes, except what had been expended in court costs and lawyers' fees. It would be like the husband taking money out of one of his pockets and putting it in another."

This declaration will fall pleasantly upon the ears of impecunious husbands who have rich wives if the court would only point out how the husband could get his hands into the other pocket and withdraw the money for his own use and pleasure without the wife's consent. This is a reversion to the old philosophy of the unity of the person of husband and wife, and if that doctrine still flourished in its common-law beauty (?) this might be true.

A bank account with the right of the whole family to draw upon it may have a sentimental basis for its existence, but any person who arms the whole family with a check book with power to draw upon the bank account will likely find himself upon a stormy sea in a leaky boat headed for the breakers via the Bad Check Law. If the late Andrew Carnegie had only fallen upon this plan years ago, he might have succeeded in dying poor long before he died rich.

"Secrecy will cure many troubles of the home, while publicity will only add fuel to the flames," is more specious than sound. Generally, as long as conditions are bearable family feuds do not become public. As long as there exists real affection and good treatment the members of the family are disposed to keep secret their disagreements; however, at times conditions put theory to the bad. It is greatly to be desired that there be peace and harmony in the family circle, but wise philosophizing in the high court will not change the actual conditions in the home.

Holden, J., concurs in above dissent.