HELEN COFFINDAFFER

*v.*

BERNARD COFFINDAFFER

(No. 13787)

Decided May 16, 1978.

*Preiser & Wilson, Monty L. Preiser,* for appellant.

MILLER, JUSTICE:

We are asked in this appeal to consider again the question of whether one spouse may maintain against the other an action for recovery of damages for personal injuries. Stated more simply, the question is whether the doctrine of interspousal immunity should be abolished.

On February 11, 1976, Mrs. Helen Coffindaffer, appellant and plaintiff below, was operating her automobile on a public highway when it was struck by an automobile driven by her husband, Bernard Coffindaffer. She allegedly sustained personal injuries as a result of this collision. Immediately following the collision, Mr. Coffindaffer left his car and allegedly assaulted Mrs. Coffindaffer, causing her further injuries.

Prior to this incident the parties had separated and were awaiting the outcome of a divorce suit. Mrs. Coffindaffer brought an action against her husband in the Circuit Court of Kanawha County on two theories. The first count encompassed damages for personal injuries arising out of the negligence of Mr. Coffindaffer in the operation of his automobile. The second count sought to recover compensatory and punitive damages for the intentional assault.

By an order dated November 8, 1976, the Circuit Court dismissed the complaint on the basis that the doctrine of interspousal immunity, pleaded by the husband, barred the action.

The origins of the doctrine of interspousal immunity are rooted in the common law, where the legal fiction of the unity of the persons, arising from the act of marriage, brought the wife's property under the use and control of her husband. Upon marriage, a woman lost her capacity to sue and her ability to contract. Her earnings became the property of her husband, since he had assumed the duty of supporting her. If she wished to enforce a substantive right against third parties, it had to be done in the name of her husband.[1]

Some relief from the harshness of a woman's common law status was available in the equity courts, at least to the extent of protecting her separate property against predacious acts of her husband. From equity's limited protections, there was a general movement to statutory

---

[1] McCundy, *Torts Between Persons in Domestic Relations*, 43 Harv. L. Rev. 1030-1033 (1930).

modification of the common law culminating in the Married Women's Property Acts of the Nineteenth Century.[2]

Section 48 of the Report of the Committee on the Legislative Department at the West Virginia Constitutional Convention, 1861-1863, contained the following provision:

"The legislature shall pass laws to protect the property of the wife against the acts and debts of the husband."

This section was deleted during the convention proceedings,[3] but the 1872 Constitution contains a similar provision found in Article VI, § 49:

"The Legislature shall pass such laws as may be necessary to protect the property of married women from the debts, liabilities and control of their husbands."

The Legislature, in advance of the 1872 constitutional mandate, enacted Chapter 66 of the Code of 1868, which contained some thirteen sections relating to the rights of married women.

Through the years the Legislature has gradually liberalized the powers granted to married women. It would serve no useful purpose to trace all of the legislative changes. However, the development of the section permitting married women to bring suits has some immediate bearing on the issues in this case. Under Chapter 66, Section 12 of the Code of 1868, the following rights were recognized:

"A married woman may sue and be sued without joining her husband in the following cases.

"I. Where the action concerns her separate property.

"II. Where the action is between herself and husband.

---

[2] *Id.*, 43 Harv. L. Rev. at 1035-1036.

[3] *Debates and Proceedings of the First Constitutional Convention of West Virginia*, 387.

"III. Where she is living separate and apart from her husband.

"And in no case need she prosecute or defend by guardian or next friend."

Judge Brannon, speaking for the Court in *Bennett v. Bennett*, 37 W. Va. 396, 16 S.E. 638 (1892), was of the view that under the foregoing section, the wife had fairly broad rights to recover against her husband:

"Our statute, (chapter 66 of the Code) allows a married woman to hold and enjoy property as her separate estate free from the power of her husband, and from that fact it might be thought she could sue him to effectuate and vindicate her separate property right,—sue him as well as any one else; and especially so as section 15 gives her right to sue alone 'where the action or suit' concerns her separate property, or is between her and her husband, using the words 'action or suit,' referring both to actions at law and suits in equity, seeming to be an unlimited grant of capacity to sue her husband.

"In several states where similar statutes prevail she is allowed to contract with her husband and sue him. [Citations omitted]" [37 W.Va. at 398, 16 S.E. at 639]

This Court in *Hamilton v. Hamilton*, 95 W. Va. 387, 121 S.E. 290 (1924), in discussing the 1893 changes to the Married Women's Act, commented on the inclusion of a new Section 15 of Chapter 3 of the 1893 Code, which provided:

"A married woman may sue or be sued in any court of law or chancery in this State, which may have jurisdiction of the subject matter, the same in all cases as if she were a *feme sole*, and any judgment rendered against her in any such suit shall be a lien against the *corpus* of her separate real estate. And an execution may issue thereon and be collected against the separate personal property of a married woman as though she were a *feme sole*."

*Hamilton* dealt with a wife's right to sue her husband on his promissory note. The Court concluded that under Section 15, she had such a right:

> "She may therefore sue or be sued in any court of *law or chancery* in this State, which may have jurisdiction of the subject-matter, the same in *all* cases as if she were a feme sole. So says the statute." [Emphasis in original] [95 W.Va. at 390, 121 S.E. at 291]

In the 1931 revision of the West Virginia Code, the language of Section 15 of Chapter 3 of the 1893 Code was modified and became W.Va. Code, 48-3-19 (1931).[4] The reviser's comment stated:

> "[This section] is intended to cover all instances where a married woman may sue or be sued, *giving her the same rights and responsibilities as if she were a single woman;*" [Emphasis added]

The plain meaning of W.Va. Code, 48-3-19, did not escape comment in this State. *See* Note, 37 W.Va. L. Rev. 92 (1931). Yet, when this Court had before it the first case of whether a spouse could sue another spouse in tort in *Poling v. Poling*, 116 W. Va. 187, 179 S.E. 604 (1935), it refused to give any effect to the statutory language. The Court made no attempt to trace the history of W.Va. Code, 48-3-19, or to discuss the implications of *Bennett* and *Hamilton* that a married woman had as broad a right to sue as a single woman. Instead, *Poling* fell back on the statutory construction rule that a statute in derogation of the common law is to be strictly construed. A proposition that is true, except where the plain meaning of the words of the statute indicate the Legislature is changing the common law. *Fruehauf Cor-*

---

[4] "A married woman may sue or be sued alone in any court of law or chancery in this State that may have jurisdiction of the subject matter, the same in all cases as if she were a single woman, and her husband shall not be joined with her in any case unless, for reasons other than the marital relation, it is proper or necessary, because of his interest or liability, to make him a party. In no case need a married woman, because of being such, prosecute or defend by guardian or next friend."

*poration v. Huntington Moving & Storage Co.,* ____ W. Va. ____, 217 S.E.2d 907 (1975).

In *Poling,* the Court placed considerable reliance on the earlier United States Supreme Court case of *Thompson v. Thompson,* 218 U.S. 611, 54 L. Ed. 1180, 31 S.Ct. 111 (1910), where, against a vigorous dissent by Justices Holmes, Hughes and Harlan, it was held that the Married Women's Act of the District of Columbia did not authorize tort actions between spouses. The only other case cited in *Poling* as authority for the interspousal immunity doctrine was *Strom v. Strom,* 98 Minn. 427, 107 N.W. 1047 (1906). However, this decision was overruled in the later case of *Beaudette v. Frana,* 285 Minn. 366, 173 N.W.2d 416 (1969), where the court stated in its single syllabus:

> "The absolute defense of interspousal immunity in actions for tort is abrogated prospectively, as to all causes of action arising after this date, and is abrogated as to the instant cases."

Since *Poling,* this Court has adhered to the rule of interspousal immunity without any attempt to analyze the correctness of its statutory interpretation. The latest direct expression of the rule is found in *Campbell v. Campbell,* 145 W. Va. 245, 114 S.E.2d 406 (1960), but again the language of W.Va. Code, 48-3-19, was not examined.[5]

Balanced against the restrictive interpretation by *Poling* and its progeny is a more recent trend to abolish common law immunities. Charitable immunity of hospitals was struck down in *Adkins v. St. Francis Hospital,* 149 W. Va. 705, 143 S.E.2d 154 (1965). This Court limited family immunity to parent-child and husband-wife relationships in *Freeland v. Freeland,* 152 W. Va. 332, 162

---

[5] In *Adams v. Grogg,* 153 W. Va. 55, 166 S.E.2d 755 (1969), the court cited *Campbell* and *Poling* to deny a wrongful death claim by the administratix of wife's estate against the husband. The Court did not discuss its earlier decision in *Morgan v. Leuck,* 137 W. Va. 546, 72 S.E.2d 825 (1952), where a wrongful death action was permitted against the husband even though the wife would be the sole beneficiary of the recovery since the deceased was her mother.

S.E.2d 922 (1968). We held that there is no common law governmental immunity for municipal corporations in *Higginbotham v. City of Charleston*, ___ W. Va. ___, 204 S.E.2d 1 (1974), and *Long v. City of Weirton*, ___ W. Va. ___, 214 S.E.2d 832 (1975). The doctrine of parental immunity was abrogated so as to permit an unemancipated minor child to sue for injuries received in a motor vehicle accident in *Lee v. Comer*, ___ W. Va. ___, 224 S.E.2d 721 (1976).

Significantly, in each of these cases the Court acted by unanimous opinion. Moreover, in all the cases except *Freeland,* the court was required to overrule its prior decisions. Finally, none of the decisions were based upon legislative changes to the common law.

When we look to other jurisdictions, we observe a decided trend to abolish or restrict the doctrine of interspousal immunity. *Bennett v. Bennett*, 224 Ala. 335, 140 So. 378 (1932); *Cramer v. Cramer*, 379 P.2d 95 (Alas. 1963); *Leach v. Leach*, 227 Ark. 599, 300 S.W.2d 15 (1957); *Klein v. Klein*, 26 Cal. Rptr. 102, 376 P.2d 70 (1962); *Rains v. Rains*, 97 Colo 19, 46 P.2d 740 (1935); *Bushnell v. Bushnell* 103 Conn. 583, 131 A. 432 (1925); *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975); *Brooks v. Robinson*, 259 Ind. 16, 284 N.E.2d 794 (1972); *Brown v. Gosser*, 262 S.W.2d 480 (Ky. 1953); *Lewis v. Lewis*, 351 N.E.2d 526 (Mass. 1976); *Hosko v. Hosko;*, 385 Mich. 39, 187 N.W.2d 236 (1971); *Beaudette v. Frana*, 285 Minn. 366, 173 N.W.2d 416 (1969); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 ___ (1974); *Thompson v. Thompson*, 105 N.H. 86, 193 A.2d 439 (1963); *Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (1970); *Maestas v. Overton*, 87 N.M. 213, 531 P.2d 947 (1975); *Jacobs v. United States Fidelity & Guaranty Co.*, 152 N.Y.S.2d 128 (1956); *Fitzmaurice v. Fitzmaurice*, 62 N.D. 191, 242 N.W. 526 (1932); *Courtney v. Courtney*, 184 Okla. 395, 87 P.2d 660 (1938); *Pardue v. Pardue*, 167 S.C. 129, 166 S.E. 101 (1932); *Scotvold v. Scotvold*, 68 S.D. 53, 298 N.W. 266 (1941); *Surratt v. Thompson*, 212 Va. 191, 183 S.E.2d 200 (1971); *Richard v. Richard*, 131 Vt. 98, 300 A.2d 637 (1973); *Freehe v.*

*Freehe*, 81 Wash. 2d 183, 500 P.2d 771 (1972); *see*, Annot., 43 A.L.R.2d 698 (1955). It is perhaps redundant to add that most commentators oppose the doctrine.[6]

Todays decision rests in part on what we perceive to be a clear trend away from the common law doctrine of interspousal immunity, and is bottomed on what we consider to be the intent of W.Va. Code, 48-3-19. The fact that our interpretation of this statute differs from that of the *Poling* Court should not be construed to mean that we feel endowed with superior analytical powers. Rather, the difference rests on the fact that the conditions of society have changed. As this Court stated in *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W. Va. 519, 522, 138 S.E. 97, 98 (1927):

> "The changed social, economic, and governmental conditions and ideals of the time, as well as the problems which the changes have produced, must also logically enter into the consideration and become influential factors in the settlement of problems of construction and interpretation."

We see no restriction in W.Va. Code, 48-3-19, on either spouse's right to maintain an action, since: "A married woman may sue *or be sued* ... the same in all cases as if she were a single woman ..."[7] [Emphasis supplied] It is obvious that once the Married Women's Act separates the concept of unity between spouses by restoring to the wife those rights, which at common law she lost through marriage, her husband has the standing to enforce his rights against her. *See, e.g., Armstrong v. Arm*

---

[6] *See, e.g.*, W. Prosser, *Handbook of the Law of Torts* § 122 (4th ed. 1971); 1 Harper & James, *The Law of Torts* §§ 8, 10 (1956); Jayme, *Interspousal Immunity: Revolution and Counter-revolution in American Tort Conflicts*, 40 So. Calif. L. Rev. 307 (1967); McCurdy, *Personal Injury Torts Between Spouses*, 4 Vill. L. Rev. 303 (1959); Farage, *Recovery for Torts Between Spouses*, 10 Ind. L.J. 290 (1935).

[7] We recognize that W.Va. Code, 48-3-9, creates a condition on the right of spouses to sue each other on contracts, and that there are other statutory provisions which may affect the scope of relief in particular cases. *See, e.g.*, W.Va. Code, 48-3-10 and -15.

*strong*, 441 P.2d 699 (Alas. 1968); *Leach v. Leach*, 300 S.W.2d 15 (Ark. 1957).[8]

We have not overlooked some of the traditional arguments raised against abrogating interspousal immunity. The concept of family harmony has been cited most frequently as a reason for maintaining interspousal immunity. Undoubtedly family harmony is a laudable goal in this era of rising divorce rates. However, it is difficult to perceive how any law barring access to the courts for personal injuries will promote harmony. If this were a valid sociological consideration, the Legislature could orchestrate even greater harmony by abolishing the statute giving the right to divorce. Moreover, there is an obvious fallacy in this argument, as under the Married Women's Act it has long been recognized that spouses may sue each other in regard to their property rights.

The often advanced suggestion of the possibility of fraud and collusion in suits between spouses was answered in *Lee v. Comer*, ___ W. Va. ___, 224 S.E.2d 721 (1976), by affirming the basic integrity of our adversary system. 224 S.E.2d at 725. To this, we would add that in suits for personal injuries, the issue is not only liability, as such cases assume real proportions only if there are valid personal injuries of some magnitude. While one can foresee that some spouses may collude to establish liability, it becomes totally strained to conceive that a substantial personal injury can be faked through the rigors of available discovery techniques.

There may be those desperate couples who would conclude that the prospect of a substantial monetary recovery is worth the pain of self-inflicted injuries. One can hardly imagine that the legal system will break down with cases brought by spouses who have flung themselves down the cellar steps or permitted the other spouse to strike them with the family car in order to

---

[8] The paucity of cases involving a husband suing his wife may not be accounted for solely because of chivalry, but also on the fact that generally wives have not accumulated much property, at least until their husbands die.

achieve the type of substantial injury that makes jury litigation worthwhile. As this Court stated in *Reilley v. Byard*, 146 W. Va. 292, 301, 119 S.E.2d 650, 655 (1961), in discussing the unexplained loss of control of a car which struck a telephone pole:

> "Obviously he did not purposely drive the Buick off the hard surface, across the 15-foot berm and into a telephone pole with severe force and violence. Rational men do not purposely operate motor vehicles in such manner. Not only traffic regulations, but also prudence and fundamental human instincts of self-preservation dictate otherwise."

The question of fraud and collusion can scarcely have any serious relevancy in those cases where there is no insurance fund available. It beggars the imagination to believe that a husband and wife will conspire with each other to accomplish a physical injury to one that will ultimately be paid out of the other's pocket, and additionally the attorneys' fees to obtain it.

We, therefore, come to a consideration of the increased exposure to liability insurance carriers as a result of today's opinion, a concern touched upon by Justice Neely in his concurring opinion in *Lee*. The central thesis there was that the insurance company would be unable, in the present state of our law, to bring to the jury's attention that it was the real party which would have to pay any judgment.

It is true that ordinarily a jury cannot be advised that a defendant carries liability insurance. *Leftwich v. Wesco Corporation*, 146 W. Va. 196, 119 S.E.2d 401 (1961). However, the rule is not absolute so that where the word "insurance" is mentioned inadvertently and not through design by plaintiff or his counsel, this is not necessarily reversible error. *Adkins v. Smith*, 142 W. Va. 772, 98 S.E.2d 712 (1957); *Walker v. Robertson*, 141 W. Va. 563, 91 S.E.2d 468 (1956); *Smith v. Gould*, 110 W. Va. 579, 159 S.E. 53 (1931). We observe, as did the Virginia court in *Willard v. Aetna Casualty and Surety Company*, 213 Va.

481, 193 S.E.2d 776 (1973), that the purpose of the rule is to protect the insurer and therefore the insurance company is free to waive the rule.

In the case of fraud or collusion as to the truthfulness of the claim, the insurance company has always been able to explore these issues through discovery techniques and where the evidence warrants, to bring the falsity of the claim before the jury. Anyone who has confronted insurance defense counsel in personal injury cases knows that it is a rare occasion when the false or collusive claim escapes their searching examination. We do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits. There is, to be sure, a difference between the ability to file a suit and to achieve a successful result. It is upon the anvil of litigation that the merit of a case is finally determined. Forged in the heat of trial, few but the meritorious survive.

Finally, we turn aside from the arguments in support of the old rule and consider for a moment what today's opinion holds for the future. Certainly, the door is now open to permit husbands or wives, who in a moment of inadvertence or negligence by their spouse have been substantially injured, to recover from applicable insurance a fair and reasonable amount for the hospital and other medical expenses and for pain and suffering.

Of significance is the right to recover for the intentional tort. Our law before today practiced a cruel paradox. Under the guise of promoting family harmony, it permitted the wife beater to practice his twisted frustrations secure in the knowledge that he was immune from civil action except for a divorce, and that any criminal penalty would ordinarily be a modest fine. If nothing else, the knowledge of a monetary judgment with punitive damages may stay such violence.

For the foregoing reasons, we hold that under the provisions of W.Va. Code, 48-3-19, the defense of inter-

spousal immunity is not available in suits between spouses in this State.

The judgment of the Circuit Court of Kanawha County is therefore reversed and this case is remanded.

*Reversed and remanded.*