NELSON SMITH, *et al.*

*v.*

CITY OF MORGANTOWN, *etc.*

(No. 15167)

Decided March 23, 1982.

*Solomon & Solomon and David L. Solomon*, for appellants.

*Wilson, Frame & Poling and Clark B. Frame*, for appellees.

PER CURIAM:

The appellant, City of Morgantown, appeals from a final judgment of the Circuit Court of Monongalia County awarding appellees, Nelson and Pauline Smith, $9,420.00 for property damages resulting from the breaking of a water main. The appellant's primary contention is that the lower court erred in instructing the jury that it was absolutely liable for water escaping from its water lines without a showing of negligence. We agree.

On March 4, 1977, a water main owned and operated by the Morgantown Water Commission, a subdivision of the City of Morgantown, burst and allowed a large volume of water to escape. The escaping water eroded a slope beside appellees' home, washing a large amount of mud and debris onto their lawn, patio and driveway necessitating their repair and the building of a retaining wall.

Appellees filed suit against the City of Morgantown on July 27, 1978. This action came to trial on November 28 and 29, 1979. Testimony adduced at trial revealed that the water line burst because appellee's predecessor, in building the house, had excavated the toe of the bank below the water main.[1] The excavation caused the hill to gradually shift, putting pressure on the line, eventually causing it to burst and allowing the water to escape. The lower court submitted this case to the jury on instruc-

---

[1] The water line had been installed on the bank behind the house some years before this excavation. The water line was buried several feet underground.

tions embodying a theory of absolute liability.[2] Appellant contends here that the lower court erred in giving these instructions because an award for damages for the type of tort alleged in the complaint cannot properly be grounded in the theory of absolute liability. We agree.

The issue of liability for damages caused by water escaping from public utility mains was considered by this Court in *Royal Furniture Company v. The City of Morgantown,* ____ W.Va. ____, 263 S.E.2d 878 (1980), a case decided after this matter went to trial. In *Royal Furniture Company,* we recognized negligence as the proper standard by which liability for water escaping from utility mains should be measured. Our discussion in that case centered on the propriety of applying the doctrine of *res ipsa loquitur* as a rule of evidence to prove negligence for water escaping from buried utility lines. We held that *res ipsa loguitur* could be used in such instances, but noted that "(i)n no way does the application of *res ipsa* doctrine dispense with the requirement that negligence must be proved by him who alleges it." *Royal Furniture Company, supra,* at 882. Our decision applying negligence as the standard by which to measure liability for damages caused by leaking water mains is in accord with the holdings of a majority of other jurisdictions. *Stein v.*

---

[2] The complained of jury charge reads, in part, as follows:

"The Court instructs the jury that under the law of the State of West Virginia if a person, firm or corporation brings water upon land or rights of way owned or controlled by it by artificial means, and collects and keeps it there, either in reservoirs or in pipes, the person or corporation is bound at his peril to see that the water does not escape to damage property of an adjoining owner, and if he does not do so, he is *prima facie* answerable for all the damage which is proximately caused by and is consequence of its escape."

"However, such person, firm or corporation, may be relieved of liability if it proves by a preponderance of the evidence that there was an intervening act resulting from no act of its own, said intervening act proximately causing or contributing to the damage; such intervening causes may include the Plaintiffs' fault, an act of God, a *vis major,* or act of a third party."

"The Court further rules as a matter of law, the Plaintiffs were without fault in this matter."

*Louisville Water Co.*, 249 S.W.2d 750 (Ky. 1952); *Mosseller v. Asheville*, 267 N.C. 104, 147 S.E.2d 558 (1966); *Interstate Sash and Door Co. v. Cleveland*, 148 Ohio St. 325, 35 Ohio Ops. 314, 74 N.E.2d 239 (1947); *Rikansrud v. Canton*, 79 S.D. 592, II6 N.W.2d 239 (1962); *City of Richmond v. Hood Rubber Products Co.*, 168 Va. 11, 190 S.E. 95 (1937); *Chavez v. Laramie*, 389 P.2d 23 (Wyo. 1964); 78 Am. Jur.2d, *Waterworks and Water Companies*, §62.

The lower court incorrectly instructed the jury as to the standard of liability in this case. Our law is well settled that "(a)n erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." Syl. pt. 3, *Orndoff v. Rowan*, 156 W.Va. 205, 192 S.E.2d 220 (1972). *See*, Syl. pt. 2, *Hollen v. Linger*, 151 W.Va. 255, 151 S.E.2d 330 (1966). The prejudicial effect of the lower court's charge to the jury is indisputable. Strict liability instructions create a prima facie inference of liability and shift the burden of proof onto the defendant to prove that he was not at fault. If this is not prejudice, we are at a loss to understand the meaning of the word.

The appellant also contends that the lower court erred in not granting a mistrial when its witness mentioned on cross-examination that the appellant was covered by insurance. We disagree.

We noted in *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 244 S.E.2d 338 (1978) that while ordinarily a jury cannot be advised that a defendant carries liability insurance, this "rule is not absolute so that where the word insurance is mentioned inadvertantly and not through design by plaintiff or his counsel, this is not necessarily reversible error." *Coffindaffer, supra*, at 343. *See, Adkins v. Smith*, 142 W.Va. 772, 98 S.E.2d 712 (1957); *Walker v. Robertson*, 141 W.Va. 563, 91 S.E.2d 468 (1956); *Smith v. Gould*, 110 W.Va. 579, S.E. 53 (1931). The critical elements that prevent a mention of insurance from constituting reversible error are inadvertency and lack of design. The record in this case reveals that the appellant's witness unwittingly mentioned insurance in response to a legitimate question designed to show that the expert witness

would receive a commission for testifying. Furthermore, the trial judge in this case promptly gave a curative instruction.

Our holding in *Coffindaffer* suggests that in some situations a mention of insurance might constitute reversible error even though it was inadvertant and without design. We find nothing in this case to suggest that such a scenario exists here and, therefore, cannot say that the lower court erred in refusing to grant the appellant's motion for a mistrial.

For the foregoing reasons, the judgment of the Circuit Court of Monongalia County is hereby reversed.

Justice Neely, Dissent: Justice Neely dissents with respect to the proper standard by which to measure appellant's liability for the water damages. He would apply the doctrine of absolute liability, as enunciated in *Rylands v. Fletcher*, (1868), L.R.3H.L. 330, to water collected in utility mains.

*Reversed; remanded for new trial.*