518 So.2d 1205 (1988)
Betty BURNS
v.
Erit Lamar BURNS.
No. 56500.
Supreme Court of Mississippi.
January 13, 1988.
*1206 C. Collier Carlton, Jr., John B. Riemenschneider, Farese, Farese & Farese, Ashland, for appellant.
James H. Mathis, Corinth, for appellee.
En Banc.
PRATHER, Justice, for the Court:
At issue in this appeal is the question of continuance of the judicially imposed rule of interspousal immunity in Mississippi. The Circuit Court of Alcorn, on a motion for judgment on the pleadings, dismissed a complaint filed by Betty Burns, against her husband, Erit Lamar Burns for an alleged assault and battery. The court ruled that the complaint was barred by the doctrine of interspousal immunity. This Court reverses the dismissal of that complaint.

I.
The only facts before the Court are that on August 1, 1984, Erit Burns allegedly assaulted and battered his wife Betty Burns. Thereafter, Betty Burns sued in circuit court to recover for her injuries. In oral argument before this Court, counsel for the parties revealed that Mr. Burns and Mrs. Burns have separated and have filed for divorce in chancery court.[1]

II.
Interspousal tort immunity is an ancient common law doctrine founded on the theory of the legal unity of husband and wife. 1 W. Blackstone, Commentaries 433.
The case most often cited as a basis for the continuance of this doctrine in Mississippi is Austin v. Austin, 136 Miss. 61, 100 So. 591 (1924).
In that case a wife sued her husband for injuries she sustained in a motor vehicle accident. Judgment was rendered for the husband. On Appeal the Mississippi Supreme Court affirmed the judgment for the husband. The wife argued that her husband was liable for his negligent acts under section 94 of our Constitution and section 2517 and 2518, Code of 1906 (§§ 93-3-1 and 93-3-3 [1972]) all of which emancipated women from the common law disability of coverture. The language of the provisions and statutes is as follows:
Sec. 94. The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads.
Sec. 2517. Married women are fully emancipated from all disability on account of coverture; and the common law as to the disabilities of married women and its effects on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every *1207 woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy and to make any contract with reference to it, and to bind herself personally, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married.
Sec. 2518. Husband and wife may sue each other.
Concluding that nothing in the above language included the right of the wife to sue the husband for a tort against her person, the Austin Court reasoned:
Our constitution and statutes on the subject were enacted for the purpose of striking down the inequalities existing between husband and wife. The intent was to put the wife on the exact equality with her husband  to emancipate her from the common-law slavery to her husband. It was not the purpose of our makers of our Constitution nor of the Legislature to entirely destroy the unity of man and wife with all the incidents flowing therefrom. One of the disabilities of coverture was that neither could testify against the other. It took a statute specifically removing that disability. Section 1916, Code 1906; Hemingway's Code, § 1576. [Miss. Code Ann. 13-1-5 (1972).] Equality between them as to the acquisition, ownership and disposition of property, and the right to contract and be contracted with, and sue and be sued with reference to property and contract rights were the things aimed at. At common law there was no right of action either by husband or wife against the other for a personal tort. There was absolute equality in that respect. Therefore, there was no occasion to emancipate the wife with reference to such torts, because the husband was under the same sort of disability as the wife.
The divorce courts and the criminal courts furnish ample redress to the husband and wife for such wrongs as thus. Husband and wife in these times have enough grievances for the courts and scandal mongers without by a strained construction another being added by the courts. If another is to be added, it must be done by the Legislature, not by the courts in the face of the great weight of authority both in numbers and reasoning. It would be hard to conceive of what good purpose would be accomplished by such suits.
100 So. at 592.
The doctrine of interspousal immunity has been followed in this state in the following: Matthews v. State Farm Mutual Auto Ins. Co., 471 So.2d 1223 (Miss. 1985) (cause of action in which one spouse sues the other for personal injury, incurred prior to marriage, is extinguished by the marriage and is not thereafter revived upon the divorce of the parties); State Farm Mutual Automobile Ins. Co. v. Nester, 459 So.2d 787 (Miss. 1984); Aitken v. State Farm Mutual Automobile Ins. Co., 404 So.2d 1040 (Miss. 1981); McNeal v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss. 1971) (one spouse has no right of action against the other to recover damages for personal injuries caused by the other); Ensminger v. Campbell, 242 Miss. 519, 134 So.2d 728 (1961) (wife had no cause of action against husband at time of accident for injuries suffered while riding as passenger in his automobile, and no cause of action for such injuries accrued to her as a result of thereafter obtaining divorce, either against former husband or against administrator of his estate after death); Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955) (wife's suit for injuries caused by husband's negligent operation of automobile, dismissed as no liability exists between husband and wife for personal tort); McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877 (1937) (wife denied recovery against her husband because of the marital relationship between them although his negligence proximately caused her injury); Deposit Guaranty Bank and Trust Co. v. Nelson, 212 Miss. 335, 54 So.2d 476, (1951) (daughter whose mother was allegedly shot and killed by the daughter's stepfather could maintain a death action against the stepfather, though, if the mother had not died, *1208 she would not have been able to have maintained an action against the stepfather for assault); Scales v. Scales, 168 Miss. 439, 151 So. 551 (1934) (right of action against husband arising out of automobile accident, existing in wife before marriage, held extinguished by marriage); H.L. Austin v. Maryland Casualty Co., 105 So. 640 (Miss. 1925) (the law gives a wife no cause of action against her husband for injury done to her because under the law no legal wrong has been done to her by her husband).

III.
Appellant now implores this Court to reevaluate the viability of this judicially created doctrine and to judicially abrogate the doctrine in response to the present needs of society. Appellant presents Judge Ethridge's dissent in Austin in support of her argument:
I cannot bring myself to consent to a decision of first impression in this state where the effect of the decision is to deny the enforcement of a right or the redress of a wrong, using these terms in a legal sense, where a person is sui juris. The principle that for every wrong there is a remedy is so vital and fundamental I cannot concur in a view that there is a legal wrong for which there is no redress in the courts or a legal right which cannot be enforced. 100 So. at 593.
Since 1924 this Court has relied on Austin and the doctrine has been summarily followed in subsequent cases without examination of its underlying premises. A criticism of this Court's past history to perpetuate obsolete doctrines is found in Tideway Oil Programs Inc. v. Serio, 431 So.2d 454, 462 (Miss. 1983) wherein this Court stated (referring to the denial of punitive damages in Chancery Court):
Our recent cases, to be sure, have routinely cited the rule, as though there were no doubt concerning its viability.
In Lewis v. Lewis, 370 Mass. 619, 351 N.E.2d 526 (1976) wherein the Massachusetts Court abrogated interspousal immunity, the Court stated:
When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula.
The Mississippi Supreme Court had expressed similar views at an earlier time.
The Supreme Court has the authority to declare for itself what the common law of this state is. The common law is the perfection of reason, and, when a rule of the common law ceases to be reasonable and just, it is no longer the common law. Those principles of the common law which are unsuited to our conditions, or repugnant to the spirit of our institutions, are not in force in this state. Only such rules of the common law as are adapted to our institutions and circumstances and not repealed by the Legislature or varied by usage are in force.
Planters' Oil Mill v. Yazoo & M.V.R. Co., 153 Miss. 712, 717, 121 So. 138, 140 (1929). See also Interstate Co. v. Garnett, 154 Miss. 325, 347, 122 So. 373, 378 (1929).
Likewise, this Court has precedent for abolition of judicially created immunities to suit. In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982) the common law sovereign immunity rule of the state and its local subdivisions was abrogated. The charitable immunity rule was abolished in Mississippi Baptist Hospital v. Holmes, 214 Miss. 906, 55 So.2d 142 (1951). The Pruett and Mississippi Baptist Hospital cases establish that, at least in the limited area of common law immunities to suit, modifications in the rule would be appropriately made by the lawmaking authority which created those rules in the first place, to wit, this Court. Therefore, this Court concludes that the continuance of the interspousal immunity is another such rule that needs reexamination.

IV.
A survey of all states and the District of Columbia reveals that at present 31 states *1209 have fully abrogated the doctrine of interspousal immunity. Eight states have abrogated the rule for vehicular torts, four states have abrogated the rule for intentional torts; one state for all personal injury actions; and one state where death of either spouse intervenes between tortuous act and commencement of suit. One state has immunity imposed by statute while five states plus the District of Columbia continue to acknowledge and sustain the doctrine. One state has a cause of action but no remedy to enforce it. (See Appendix).
The forty-four states abrogating the doctrine recognize that reasons for the common law rule no longer exist. Three reasons traditionally assigned as justification for the doctrine of interspousal immunity are: (A) the legal unity of the husband and wife recognized at common law; (B) the promotion of peace and harmony in the home; and (C) the avoidance of fraudulent or collusive claims.

A.
The common law unity concept which prohibited suits between spouses for any claim is no longer viable. Although conferring of women's rights was considered as early as 1839, Mississippi Senate Journal, 13 Feb. 1839, p. 265, Mississippi House Journal, 15 Feb. 1839, p. 438, the Mississippi Constitution of 1890 [section 94] and the Code of 1906 [§§ 93-3-1 and 93-3-3 (1972)], are enactments that insured the right of married women "to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto," "to bind herself personally, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married." Additionally, section 2518, Code of 1906, [Miss. Code Ann. § 93-3-3 (1972)] provides that husband and wife may sue each other.
By discarding "the common law unity concept," this Court would imply no denigration to the spiritual and emotional unity which is recognized by virtue of marital vows. In Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771, 773 (1972), a case fully abrogating the doctrine of interspousal immunity in that state, the Washington Supreme Court wrote:
The "supposed unity" of husband and wife, which serves as the traditional basis of interspousal disability, is not a reference to the common nature or loving oneness achieved in a marriage of two free individuals. Rather, this traditional premise had reference to a situation, coming on from antiquity, in which a woman's marriage for most purposes rendered her a chattel of her husband.
It is this concept of legal unity, which constituted a woman a chattel to her husband, that can no longer operate to bar one spouse from suing the other for intentional tortious claims.
As noted, in Mississippi spouses are able to sue each other for breach of contract and to protect property rights, Trigg v. Trigg, 498 So.2d 334, 336 (Miss. 1986); May v. May, 229 Miss. 97, 90 So.2d 169 (1956), but they may not sue each other for tortious injury, negligent or intentional. Tobias v. Tobias, 225 Miss. 392, 83 So.2d 638 (1955); Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955) (wife who was injured when husband negligently drove automobile into a tree, could not recover damages against husband). The inconsistency of this approach is clear in view of Mississippi Constitution Art. 3, section 24, which reads in pertinent part:
All courts shall be open; and every person for an injury done him in his ... person ... shall have a remedy by due course of law, and right and justice shall be administered without sale, denial or delay.
This argument to allow claims between spouses for tortious injury was advanced in Judge Ethridge's dissent in Austin v. Austin, 136 Miss. 61, 100 So. at 591, 595 (1924):
When we come to section 24 of the Constitution, above set out, we find that the Constitution itself gives every person for an injury done him in his lands, goods, person, or reputation, a remedy by due course of law. This section of the Constitution is not merely high-sounding phraseology, but it guarantees to every person in the state, whether male or female, *1210 who has an injury done him in his lands, goods, person, or reputation, a remedy by due course of law, and it is not within the power of the Legislature to deny to such person a remedy for the injury.
When the Constitution and Legislature emancipated women from the disability of coverture, they necessarily made her a legal person, and made her sui juris, capable of attending to her own affairs to the same extent that she could if she had never been married at all. This section of the Constitution is the law. It has all the force of law. Every person who is sui juris has the right under the law to a redress for a personal injury. There can be no kind of doubt about the fact that the wife is a person. The old fiction of the unity of person of the husband and wife has been completely abrogated as shown by the expressions of this court above. Hereafter there can be no distinction. This section does not merely place the wife on an equality with her husband, but it places her on an equality with a single woman, and gives her all the rights that she would have had under the same facts if she were single instead of married.
We have no statute in this state expressly conferring upon ex-slaves the right to sue their former masters, but such right follows as a matter of course, when the slave became a legal person, capable of exercising the same rights as other citizens exercise. The right followed the change of status as the night follows the day. The Legislature, of course, could have kept women shackled, subject to the tyranny and fury of their husband, had it seen fit and proper to do so  had not the Constitutional Convention acted. We are constantly passing upon cases and awarding redress for legal injuries where there is no statute, the cause of action arising from an invasion of a personal right or the infliction of a legal injury.

B.
The idea that maintenance of interspousal immunity will promote the public interest in domestic tranquillity is wholly illusory. If one spouse commits against the other an act which, but for the immunity, would constitute a tort, the desired state of matrimonial tranquillity is necessarily destroyed. But common sense suggests the peace is destroyed by the act of the offending spouse, not the lawsuit filed by the other. Beyond that, maintenance of the immunity surely cannot prevent injured spouses from harboring ill will and anger. Seen in this light, our traditional rule of interspousal immunity appears incapable of achieving the end claimed for it. Instead it leaves injured spouses without adequate or complete remedies. It is also noted that remedies incident to divorce and criminal prosecution are not adequate for the protection sought in this type of intentional tort.
It is this Court's opinion that the doctrine of interspousal tort immunity cannot be maintained on the ground that it promotes marital peace and harmony.

C.
The third argument espoused in support of the doctrine is that to allow such suits would encourage fraud and collusion. The Supreme Court of California, in abrogating the interspousal immunity rule reasoned:
It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual.
Klein v. Klein, 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962).
In Brooks v. Robinson, 259 Ind. 16, 284 N.E.2d 794, 797 (1972), the Indiana Supreme Court wrote:
The possibility of fraud and collusion exists in all litigation. However, we are not convinced that the danger is so great when the plaintiff and defendant are also husband and wife that judicial relief *1211 should be summarily denied. Furthermore, it should not be overlooked that the testimony of both parties will be extremely vulnerable to impeachment at trial on the grounds of bias, interest and prejudice. The trial court's responsibility, indeed, its duty, to properly instruct the jury on the credibility of witnesses and the rules governing the weight of evidence will remain unchanged, and, as was stated in United States v. Freeman (2d Cir.1966), 357 F.2d 606, 620, "... it cannot be presumed that juries will check their common sense at the courtroom door."
In yet another opinion abrogating interspousal tort immunity the Washington Supreme Court reasoned:
[T]he fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class... . Courts will not immunize tort feasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the legislature to deal with the problem as a question of public policy.
Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771, 773 (1972).
All of the reasoning and analysis of these opinions from our sister states equally applies to our consideration of the possible fraud or collusion argument within this state, and this Court is of the opinion such fraud argument lacks validity. "Our system of justice is capable of ascertaining the existence of fraud and collusion." Price v. Price, 732 S.W.2d 316 (Tex. 1987). Likewise, "[w]e do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless lawsuits." Coffindaffer v. Coffindaffer 161 W. Va. 557, 244 S.E.2d 338 (1978).
Looking to the above arguments, this Court is sufficiently persuaded that there is no justification to preserve and leave intact the interspousal immunity doctrine. In fact to do so repudiates the constitutional guarantee of equal protection of the laws. United States Constitution, Amendment XIV. Price v. Price, supra.
This time honored rule no longer fits the reasoning and rationale of today's mores as evidenced by the abrogation of the rule in whole or in part, in 44 of the states.

V.
This Court hereby abrogates the rule of interspousal immunity. Therefore, this Court reverses the decision of the trial judge and remands the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and GRIFFIN, J., dissent.

APPENDIX

JURISDICTIONS AND DECISIONS ON INTERSPOUSAL IMMUNITY
Rule fully abrogated:

Alabama 1931 Penton v. Penton 223 Ala. 282,
 135 So. 481
Alaska 1963 Cramer v. Cramer 379 P.2d 95
Arkansas 1957 Leach v. Leach 227 Ark. 599,
 300 S.W.2d 15
California 1962 Klein v. Klein 58 Cal.2d 692,
 26 Cal. Rptr. 102,
 376 P.2d 70
*1212 Colorado 1935 Rains v. Rains 97 Colo. 19,
 46 P.2d 740
Connecticut 1914 Brown v. Brown 89 Conn. 42,
 89 A. 889
Indiana 1972 Brooks v. Robinson 259 Ind. 16,
 284 N.E.2d 794
Kentucky 1953 Brown v. Gosser 262 S.W.2d 480
Maine 1980 MacDonald v. MacDonald 412 A.2d 71
Michigan 1971 Hosko v. Hosko 385 Mich. 39,
 187 N.W.2d 236
Montana 1986 Noone v. Fink 721 P.2d 1275
Nebraska 1979 Imig v. March 203 Neb. 537,
 279 N.W.2d 382
New Hampshire 1915 Gilman v. Gilman 78 N.H. 4,
 95 A. 657
New Jersey 1978 Merenoff v. Merenoff 76 N.J. 535,
 388 A.2d 951
New Mexico 1975 Maestas v. Overton 87 N.M. 213,
 531 P.2d 947
New York 1974 State Farm Mut. Auto. Ins.
 Co. v. Westlake 35 N.Y.2d 587,
 364 N.Y.S.2d 482,
 324 N.E.2d 137
North Carolina 1920 Crowell v. Crowell 180 N.C. 516,
 105 S.E. 206
North Dakota 1932 Fitzmaurice v. Fitzmaurice 62 N.D. 191,
 242 N.W. 526
Ohio 1985 Shearer v. Shearer 18 Ohio St.3d 94,
 480 N.E.2d 388
Oklahoma 1938 Courtney v. Courtney 184 Okl. 395,
 87 P.2d 660
Pennsylvania 1981 Hack v. Hack 495 Pa. 300,
 433 A.2d 859
South Carolina 1932 Pardue v. Pardue 167 S.C. 129,
 166 S.E. 101
South Dakota 1941 Scotvold v. Scotvold 68 S.D. 53,
 298 N.W. 266
Tennessee 1983 Davis v. Davis 657 S.W.2d 753
Texas 1987 Price v. Price 732 S.W.2d 316
Utah 1980 Stoker v. Stoker 616 P.2d 590
Washington 1972 Freehe v. Freehe 81 Wash.2d 183,
 500 P.2d 771
West Virginia 1978 Coffindaffer v. Coffindaffer 161 W. Va. 557,
 244 S.E.2d 338
Wisconsin 1926 Wait v. Pierce 191 Wis. 202,
 209 N.W. 475
Wyoming 1987 Tader v. Tader 737 P.2d 1065
Rule abrogated for vehicular torts:
Arizona 1982 Fernandez v. Romo 132 Ariz. 447,
 646 P.2d 878
Idaho 1975 Rogers v. Yellowstone Park 97 Idaho 14,
 Co. 539 P.2d 566
Maryland 1983 Boblitz v. Boblitz 296 Md. 242,
 462 A.2d 506
Massachusetts 1976 Lewis v. Lewis 370 Mass. 619,
 351 N.E.2d 526
Nevada 1974 Rupert v. Stienne 90 Nev. 397,
 528 P.2d 1013
*1213 Rhode Island 1978 Digby v. Digby 120 R.I. 299,
 388 A.2d 1
Vermont 1973 Richard v. Richard 131 Vt. 98,
 300 A.2d 637
Virginia 1971 Surratt v. Thompson 212 Va. 191,
 183 S.E.2d 200
Rule acknowledged and sustained:
Delaware 1968 Short Line, Inc. v. Perez 238 A.2d 341
District of Columbia 1910 Thompson v. Thompson 218 U.S. 611,
 31 S.Ct. 111,
 54 L.Ed. 1180
Florida 1979 Raisen v. Raisen 379 So.2d 352
Georgia 1936 Eddleman v. Eddleman 183 Ga. 766,
 189 S.E. 833
Hawaii 1958 Tugaeff v. Tugaeff 42 Hawaii 455
Mississippi 1924 Austin v. Austin 136 Miss. 61,
 100 So. 591
Rule abrogated as to intentional torts:
Idaho 1949 Lorang v. Hays 69 Idaho 440,
 209 P.2d 733
Kansas 1982 Stevens v. Stevens 231 Kan. 726,
 647 P.2d 1346
Missouri 1986 Townsend v. Townsend 708 S.W.2d 646
Oregon 1955 Apitz v. Dames 205 Or. 242,
 287 P.2d 585
Rule of immunity imposed by statute:
Illinois 1960 Heckendorn v. First Nat'l 19 Ill.2d 190,
 Bank 166 N.E.2d 571
Rule abrogated for all personal injury actions:
Iowa 1979 Shook v. Crabb 281 N.W.2d 616
Because of the competing effect of two statutes, (Article 2315 and LSA-RS
9:291) has a cause of action but no remedy to enforce it:
Louisiana 1965 Smith v. Southern Farm Bureau 247 La. 695,
 174 So.2d 122
Rule fully abrogated prospectively:
Minnesota 1969 Beaudette v. Frana 285 Minn. 366,
 173 N.W.2d 416
Rule abrogated where death of either spouse intervenes between tortious act
and commencement of suit:
Rhode Island 1953 Asplin v. Amica 121 R.I. 51,
 394 A.2d 1353

GRIFFIN, Justice, dissenting:
With deference, I dissent from the majority opinion. The Learned Trial Judge bottomed his decision on Austin v. Austin, 136 Miss. 61, 100 So. 591 (1924). In this he was correct and I would affirm. It appears to me that the majority believes the rule in Austin should be changed simply because it is old. Some law, like wine, gets better with age; for example, the Law of Moses. Quoting a politician, "If it ain't broke, don't fix it." Here I know of no public clamor to allow one spouse to sue another in this type of action, and if such exists the legislature will take notice thereof and properly debate it as a public issue. Incidentally, the legislature convenes in about three weeks. The legislature has had approximately sixty-four years to amend the statutes to permit such an action as this and to my knowledge no bill has even been introduced.
It should be borne in mind that we are creating a two-edged sword that cuts both ways, inflicting equal punishment upon both sexes. Why the need for it? One guilty of assault and battery may be prosecuted *1214 therefor. The divorce courts are open, and the females may obtain alimony. It would appear to me that the majority opinion opens the door for awards of alimony to males. Certainly, if a man is entitled to sue his wife for assault and battery, he should be allowed to recover alimony for such conduct in a divorce action. I would adhere to the time-honored law.
The issue upon which the trial court decision turned, and the only one before this Court, involves judicial treatment of the rule of interspousal tort immunity in Mississippi, as determined from the construction of our constitutional provisions and statutes on the subject.
These code sections and constitutional provisions under which women were first emancipated from the common law disability of coverture, but have since become emblematic of a failure of the legislature to clearly set forth public policy in this state regarding the right of a wife to sue her husband in tort and vice-versa, are as follows:
Sec. 94. The legislature shall never create by law any distinction between the rights of men and women to acquire, own, enjoy, and dispose of property of all kinds, or their power to contract in reference thereto. Married women are hereby fully emancipated from all disability on account of coverture. But this shall not prevent the legislature from regulating contracts between husband and wife; nor shall the legislature be prevented from regulating the sale of homesteads.
Section 2517. Married women are fully emancipated from all disability on account of coverture; and the common law as to the disabilities of married women and its effects on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession or expectancy and to make any contract with reference to it, and to bind herself personally, and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married.
2518. Husband and wife may sue each other.
Miss. Const., § 94; Code 1906, § 2517, 2518 (Miss. Code Ann. §§ 93-3-1 and 93-3-3 (1972)).
For a proper perspective of this Court's interpretation of the statutes and regulations which has resulted in our embracing interspousal tort immunity, it may be necessary to recapitulate the general history and nature of the doctrine. Interspousal tort immunity traces its roots to the common law, in which husband and wife shared a single legal identity. More significantly, the husband held his own juridical position in society, as well as that of his wife whose legal identity had merged with that of her husband upon entering into marriage.
This early state of affairs from which the doctrine of interspousal tort immunity grew is reflected nowhere better than in the early case on the subject in which the high court in Maine, following the English common law under Phillips v. Barnet, 1 Q.B.D. 436 (1876), held that "[t]he legal character of an act of violence by husband upon wife and of the consequences that flow from it is fixed by [the] marital condition of the parties at the time the act is done." Abbott v. Abbott, 67 Me. 304 (Sup. Jud.Ct. 1877). This immunity which arose as a legal consequence of marriage at common law was, however, equally effective in preventing the husband from suing his wife in tort, as there developed an absolute bar "for one spouse ever to be held civilly liable as a tortfeasor, in any situation and without exception, to the other for any act, antenuptial or during marriage, causing personal injury which would have been a tort but for the marriage." Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978), quoting McCurdy, "Personal Injury Torts Between Spouses", 4 Vil.L.Rev. 303, 307 *1215 (1959). See also, 1 Blackstone, Commentaries 442; McCurdy, "Torts Between Persons in Domestic Relation", 43 Harv.L.Rev. 1030, 1031-35 (1930); Harper & James, The Law of Torts, 643 (1956); Prosser, Law of Torts, 859-60 (4th Ed. 1971); Hudson v. Gas Consumers' Association, 123 N.J.L. 252, 253, 8 A.2d 337 (E. and A. 1934); Bendler v. Bendler, 3 N.J. 161, 173-74, 69 A.2d 302 (1949) (Ackerson, J., dissenting).
However, with the enactment and adoption of the Married Women's Act by many states, beginning in the late 1800's, many of the disabilities faced by women in that particular class were removed. See, Guffy, by and through Reeves v. Guffy, 230 Kan. 89, 631 P.2d 646 (1981); Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910); Norris v. Corkill, 32 Kan. 409, 4 P. 862 (1884). But, while the propagators of the acts may be lauded for their efforts to bestow upon married women a separate legal identity, and in most instances this was the case, "these statutes ... rarely addressed with any preciseness the question of whether a cause of action for tort between married persons could be brought. Consequently the impact of these statutory laws upon the doctrine of interspousal tort immunity has been uneven throughout common law jurisdictions." Merenoff, supra, 388 A.2d at 954, quoting McCurdy, supra, 4 Vil.L.R. at 336.
Our own seminal case which has been oft-cited in affirming the doctrine of interspousal tort immunity is Austin v. Austin, supra. Austin involved a suit for damages filed by the appellant, Mrs. Viola Austin, in which she allegedly received injuries by reason of her husband's negligence in operating an automobile in which she was riding as his guest. In affirming the order of the Hinds County Circuit Court disallowing suit by a wife against her husband, this Court found that even though the legislature had given Mrs. Austin a remedy to sue, a right of action had not been conferred. Austin, supra, at 100 So. 592. Further, the Court determined that despite Justice Ethridge's vigorous (and lengthy) dissent to the contrary, the jurisdictions which had abrogated the doctrine of interspousal tort immunity had done so through broad and liberal construction of statutes materially and substantively different from the Mississippi statutes and constitutional provisions at issue in the case at bar.[1]
Since Austin, this Court has consistently maintained that one spouse may not sue the other at law, in tort. Matthews v. State Farm Mutual Auto Ins. Co., 471 So.2d 1223 (Miss. 1985); State Farm Mutual Automobile Ins. Co. v. Nester, 459 So.2d 787 (Miss. 1984); Aitken v. State Farm Mutual Automobile Ins. Co., 404 So.2d 1040 (Miss. 1981); McNeal v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss. 1971); Ensminger v. Campbell, 242 Miss. 519, 134 So.2d 728 (1961); Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955); McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877 (1937); Deposit Guaranty Bank and Trust Co. v. Nelson, 212 Miss. 335, 54 So.2d 476 (1951); Scales v. Scales, 168 Miss. 439, 151 So. 551 (1934); H.L. Austin v. Maryland Casualty Co., 105 So. 640 (Miss. 1925).
We are not persuaded that at this or any time the common law rule as recognized in Austin and the cases following should be overruled by judicial decision. In so speaking, we do not even consider the ludicrous contention that upholding the doctrine of interspousal tort immunity ignores the changing reasoning and rationale behind today's social mores.
We believe, or hope the case is such, that what led the Court in Austin to declare in 1924 that the intent of the legislature in enacting the statutes and constitutional provisions on the subject were for the purpose of "striking down the inequalities between husband and wife ... not ... to entirely destroy the unity of man and wife with all the incidents flowing therefrom." Austin, supra, 100 So. at 592, is still the case today.
*1216 As mentioned previously in a footnote, this Court is cognizant of the current widespread trend towards abrogation of the doctrine of interspousal tort immunity and its accompanying criticism. See, e.g., Merenoff, supra, 388 A.2d at 954-55 ("... currently only a handful of courts unqualifiedly retain the doctrine in its pristine formulation ... and it is clear, ... that despite its survival in varying forms, interspousal immunity is no longer the doctrinal monolith it was in olden times.") See also, Klein v. Klein, 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962); Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (S.Ct. 1972). However, we believe the time-honored recognition of the doctrine merits our continued adherence and support, at least until the legislature finds interspousal tort immunity contrary to the public policy of the state and effects any changes necessary to its abrogation.
Our hesitance to interfere with the common law rule as it currently stands is founded not only in our belief that a legislative solution is called for, but also in several other reasons, the foremost of which have been recognized by the Delaware Supreme Court in Alfree v. Alfree, 410 A.2d 161 (Del. 1979). The court there expressed concern over the doctrine and acknowledged and sustained interspousal immunity for the following reasons:
First as to tort law, elimination of the doctrine could: (1) open up the possibility of various tort actions such as assault and intentional infliction of emotional harm which could go to the heart of public policy and legislative policy relating to marriage; (2) make many routine automobile cases by way of contribution an involuntary suit of one spouse against another; (3) make common automobile negligence issues, including assumption of the risk and guest statute questions, ones of aggravated accusation by one spouse against another; and (4) affect legislative policy in the no-fault insurance field.
Second, as to property law, we note that marriage has many protective attributes not available to others including the duty to support, the right to inherit, and the right to hold property free from assault by a spouse's individual creditors as tenants by the entirety. Thus, the public policy relating to the marriage status is more complex than treatment of interspousal immunity doctrine in isolation would suggest.
Alfree, supra, 410 A.2d at 162.
Too, we continue to adhere to the doctrine based upon additional grounds, including but not limited to: (1) stare decisis; (2) no express constitutional or statutory authorization for interspousal tort actions; (3) the possibility of an onslaught of fraudulent and collusive actions perpetrated on the courts of this state, particularly in an area where insurance is involved; (4) an overburdening of a court system with a multitude of frivolous suits, where the dockets already groan under the weight of legitimate actions; and (5) the existence of adequate alternative remedies.
This last point was addressed briefly in Austin, supra, 100 So. at 592, in which Justice Anderson for the Court postulated that the divorce courts and the criminal courts furnished ample redress to husband and wife for cases such as the one before him. A majority of the jurisdictions reject this final argument asserted in justification of interspousal immunity in that they contend it is inconsistent with the concept that immunity will promote domestic harmony. See, e.g., Guffy, supra, 631 P.2d at 657, (Prager, Justice, dissenting); Richard v. Richard, 131 Vt. 98, 300 A.2d 637 (Vt. 1973); Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660 (1938). The argument has been rejected as well by various other states because these "alternate remedies" fail to provide monetary compensation to the victim for injuries suffered. Freehe, supra, 500 P.2d at 771. See also, Prosser on Torts § 116, 883 (3rd ed. 1964).
We submit that such convoluted reasoning ignores what to us appears as readily apparent: denial of a legal in tort remedy does not automatically instill back into discordant households the former state of peace and harmony (if, in fact, one did exist). Yet, the presence of interspousal tort immunity must act as a deterrent to *1217 many hastily filed lawsuits  which but for the thought of some quickly gained retribution might never have been instituted  and justifies the doctrine's existence, resolving any doubts as to its application in this state.
This Court cannot serve as the source of authority for an issue of the present kind. The times change as does the membership of this Court: to allow current personal preference to overcome a long-established principle of law presents the grave problem of vacillating judgments which ignore the ultimate effect of legislative pronouncements. We note too that, since Austin, the legislature and general voting public have had ample opportunity to correct any error committed therein. No such action has been taken. We do not presume to posit this judicial body in a place where it does not belong. While it is true that we might follow the example set by the majority of jurisdictions which have abrogated interspousal tort immunity through broad construction of their individual state statutes, such a departure from common law where we have received no encouragement from the general public and their chosen representatives is assuredly premature.
Accordingly, there being no merit to appellant's contention in the case at bar, I would affirm the decision of the trial court.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., join this opinion.
NOTES
[1] Counsel represented that the chancellor had taken the case under advisement shortly prior to his death.
[1] At that time only a handful of states had abrogated the common law rule of interspousal tort immunity in some form; since then the inclination of the states dealing with this subject has been to establish firmly the right of one spouse to sue another in tort as the majority rule. However, this is bottomed on statutory construction, not court-made law.